[No. 38910.    Department Two.    December 28, 1967.]

KAY CORPORATION, *Appellant,* v. WILLIAM H. ANDERSON, JR., *et al., Respondents.**

*Reported in 436 P.2d 459.

880

*Montgomery, Purdue, Blankinship & Austin,* for appellant.

*Ferguson & Burdell,* by *J. Richard Manning,* for respondents.

HILL, J.—This is a boundary-line dispute with the plaintiff claiming to the line described in instruments of record executed by a common grantor and seeking to oust the defendants from a claimed encroachment. The defendants in possession are claiming that all the land they occupy is within the lines staked on the ground and agreed to between the common grantor and a purchaser—the predecessor in interest of the defendants. The property has been occupied to the latter lines by the purchaser (the Dyes) and their successors in interest at all times since the sale in 1956. The plaintiff, which acquired title as assignee of a redemptioner from a sheriff's sale following a mortgage foreclosure (against the common grantor), brought this action in 1965, so there is no contention of adverse possession.

There are certain trial errors claimed which will be considered later in the opinion; but the basic questions on this appeal are identical with those decided in *Atwell v. Olson,* 30 Wn.2d 179, 180, 190 P.2d 783 (1948). The court there said that the only issues were:

Did the common grantor of the predecessors in interest of respondents and of appellants establish a dividing line

between the portion of land sold by him to his grantee and the portion retained by the grantor, which the common grantor and his grantee agreed was the boundary line between the two properties?

If the foregoing question is answered in the affirmative, is the agreed boundary, so fixed and determined, binding upon the successors in interest of the common grantor?

We there held that there had been an agreed boundary line established by the common grantor and his grantee, and that it was binding on the successors in interest of the common grantor.

The trial court reached the same conclusions in the present case, and the evidence supports those conclusions in all respects needed to affirm the present judgment.[1]

This is the background of the present controversy: In 1955 Jay Roberts was promoting the development of a real estate subdivision owned by him, known as Jay Roberts Country Club Estates. He interested his friend, William H. (Tippy) Dye, then basketball coach at the University of Washington, in building a home in block 2 of that subdivision on a site which had a commanding and sweeping view of Lake Washington and the Cascade Mountains. The site desired did not fit within the established lot lines, so it was necessary to carve a new tract for the Dyes out of lots 3 and 4 in block 2. The street line was curving and there were differing courses on each of the four interior lines of the tract created for the Dyes.

The controversy arises out of the fact that the lines in the legal description contained in the deed, from Roberts to the Dyes, do not coincide with the lines agreed to by Roberts and Mr. Dye.

The record establishes that Dye trusted and relied on Roberts, who handled all the details of the transaction, and

---

[1]The judgment appealed from relates only to title to portions of lots 3 and 4, block 2, Jay Roberts Country Club Estates; the agreed line, as established by the evidence would also have included part of lot 5. The trial court awarded such portion of lot 5 to the plaintiff on the basis of a quitclaim deed executed by the original grantee, relinquishing all interest in lot 5.

Dye may never have seen the deed. Asked if the description in the deed covered the land pointed out to him by Roberts, his reply was: "I don't think I would know even if I read one." Roberts procured the architect for the Dyes, arranged for the financing, secured the building permit, and then built the house with his own crew. Incidentally, he built the house several feet further west and northerly than called for on the plot plan furnished to the building department. He was very proud of the house, and it was, as one witness said, "his own creation."

The description contained in the deed would not only have cramped his "creation," but would have placed a portion of the driveway on property not conveyed to the Dyes.

Both the description contained in the deed to the Dyes and the line Roberts pointed out to Mr. Dye included, by inadvertence, a small portion of lot 5; and Roberts secured a quitclaim back from the Dyes of any portion of lot 5 included in the metes and bounds description in the deed.

By 1966, when the case was tried, the Dyes were living in Lincoln, Nebraska, and Roberts in San Francisco, California; both Dye and Roberts testified by deposition. Dye was able to tie his description of the lines on the critical westerly and northwesterly sides of the property to landmarks such as the crest of a bank, and a maple tree. He testified as to a number of stakes being on the lines which he described.

■ There was ample evidence to sustain the findings of the trial court that Roberts, as owner of all the property in block 2 of Jay Roberts Country Club Estates, did point out to Mr. Dye the lines concerning which he testified; and that they both accepted those lines as dividing the property which Dye was purchasing from that which Roberts was retaining. The Dyes and the purchasers from them—Mr. and Mrs. William H. Anderson, Jr., the defendants (respondents here)—have occupied and claimed to those lines, and the extent of their occupation has been of a character visible to anybody looking at the property.

There is no contention that the plaintiff was misled. Its case rests on the basis that it has legal title to everything in block 2 of Jay Roberts Country Club Estates, except the portions of lots 3 and 4 described in the deed from Roberts to the Dyes. That would be an entirely adequate basis had Roberts and Dye not agreed upon different lot lines than those called for in the deed.

The chain of title from Roberts to the plaintiff is short. Roberts, being in financial difficulties, mortgaged a very considerable amount of property including block 2, Jay Roberts Country Club Estates, except the portions of lots 3 and 4 described in the deed to the Dyes. This mortgage was foreclosed and the property sold. There was a series of successive redemptions by judgment creditors (and perhaps others) having a right of redemption. On August 6, 1958, the sheriff's deed finally issued an undivided half interest each to the executors of the estate of Alexander B. McEachern and to Kemp O. Hiatt, as the assignees of the final redemptioner, Cameo Corporation.

These grantees in the sheriff's deed conveyed to the plaintiff, Kay Corporation. This corporation was organized by Kemp O. Hiatt and his wife who own all of the stock. There are no countervailing equities. Mr. Hiatt testified at the trial that he had lived near the property in question since before the erection of the Dye home. He was on the property frequently during the building process and saw the developments, plantings, and landscaping. At all times he knew the lines to which the Dyes and the defendants were improving and occupying their property. Not until after he had a survey made in 1960 was any claim made that the defendants were occupying property beyond their boundaries.

While the trial court finds the true boundary lines to be the lines upon which Roberts and Dye agreed and upholds the defendants' right to occupy to those lines (except as to the portion of lot 5 quitclaimed back to Roberts), this is not, as the plaintiff seeks to argue, an effort by the defendants to reform the deed from Roberts to the Dyes.

The defendants' contention is that there was an agreed boundary line; the only issue is whether there is substantial evidence to sustain the finding of the trial court that Roberts and Dye agreed upon certain lines as the boundary lines between the portion of lots 3 and 4, block 2, which Roberts retained, and the portion he sold to the Dyes. The evidence does establish that there were such agreed boundary lines.

We come now to a consideration of the claimed trial errors.

The plaintiff urges that it was entitled to a mistrial because the trial judge had prejudged the case and was determined to decide for the defendants.

> When the appellant's counsel asked on what basis, the judge replied that he hadn't yet determined the ground, but he would work hard at it and would find a way which would stand up on appeal.[2]

Whatever happened transpired in chambers at the end of the second day of the trial, both sides having completed their cases in chief, and the plaintiff having presented one witness in rebuttal, but not having completed its rebuttal.

The next morning, after the plaintiff's counsel had moved for a mistrial, the court said:

> Now, let's look at this a little bit more calmly than that. I did bring you in, hoping that maybe this situation, which is charged with a great deal of emotion on both sides here, might be resolved, that was all. And I have indicated, and as I mentioned this morning I am rather leaning toward the idea, and I have in mind, that the defendant's position is the sounder position.
>
> However, I have not decided it. Of course, I did indicate that I would have to work last night studying the facts and the law very carefully in this case, which I did, I will assure you; not with the idea of prejudging anything, however.
>
> You may proceed with the trial of the case. Your motions will be denied.

The court, at the beginning of his oral decision again adverted to counsel's statement, saying:

---

[2]Appellant's brief, p. 36.

Well, gentlemen, I will say at the outset that I regret my remarks in chambers were misconstrued by plaintiff's counsel. I suppose it is one of the risks a judge must take when he tries to effect a settlement in a case involving emotions running as high as here. However, as the evidence which was crucial in the case was already in, I thought I would see if there might be a way of putting an end to this cruel and costly litigation. I hoped there might be a middle ground. I felt that informing the parties of the way I thought I was leaning might assist in settlement. When plaintiff's counsel questioned the legal strength of the defendant's case, I did, indeed, say I would have to go to work. However, I meant by that that this was a case in which the difficult questions of fact and law make it imperative that a judge scrutinize all aspects of the case with the greatest care, and may I assure you that I have tried to do so.

■ We are accepting the trial court's explanation that it had not reached any conclusion at the time the remarks were made, but only that it had developed some "leanings." It is difficult to imagine that one could remain completely sterile of any "leanings" through two days of testimony.

Certainly, with the conflicting interpretations of what was said, the record before us does not overcome the presumption that the judge performed his functions regularly and properly and without bias or prejudice.

Finally, it is contended that,

Over objection, the court permitted Mr. Anderson to show on defendant's Exhibit 29 the location of stakes which he said were pointed out to him by Mr. Dye. The out of court statement of Mr. Dye came in as proof that the stakes were boundary markers, that they were in the location pointed out by Mr. Dye and by implication that they were the same stakes as Mr. Dye claims were pointed out to him by Roberts.[3]

■ We have heretofore pointed out that while hearsay is generally "incompetent," there are exceptions; and that the establishment of corners and boundaries may, under certain conditions, be proven by hearsay testimony and by reputation. *Inmon v. Pearson,* 47 Wash. 402, 404, 92 Pac. 279

---

[3]Appellant's brief, p. 37.

(1907). We pointed out in *Alverson v. Hooper*, 108 Wash. 510, 513, 185 Pac. 808 (1919), that the rule admitting the out-of-court declarations of parties concerning the locations of corners and boundaries is surrounded by limitations, saying:

> The declarations must have been made before any controversy arose touching the matter to which it relates; it must have been made by a person shown to have means of knowledge; and the person making the declarations must be shown to be dead, or for some other reason incapable of being summoned and sworn as a witness. No rule permits the proof of a substantive fact by declarations of persons not parties to the record, or parties in privity with parties to the record, when the person himself can be summoned and sworn as a witness.

The out-of-court statements of Mr. Dye (he being then in Lincoln, Nebraska) were admissible under these qualifications.

It should be noted also that in his deposition Mr. Dye had testified, without objection, to the specific boundary lines fixed by Mr. Roberts, and that, also without objection, he had testified that he had pointed out the same lines to Mr. Anderson at the time the Andersons purchased the property from them (the Dyes).

We find no merit in this assignment of error.

The judgment appealed from is affirmed.

FINLEY, C. J., DONWORTH and HAMILTON, JJ., and OTT, J. Pro Tem., concur.