[No. 200,681-7. En Banc.]
Argued March 18, 2010. Decided June 10, 2010.

*In the Matter of the Disciplinary Proceeding Against* PAUL H. KING, *an Attorney at Law.*

---

*Paul H. King*, pro se.
*Scott Busby*, for the Bar Association.

¶1 J.M. JOHNSON, J. — In 2007, the Washington State Bar Association (Association) charged Paul H. King with 10 counts of violating the Rules of Professional Conduct (RPC). The hearing officer found that eight counts were proved by a clear preponderance of the evidence due to his representation of a client while suspended from the practice of law and subsequent conduct during disciplinary proceedings. The hearing officer recommended Mr. King's disbarment, and the disciplinary board (Board) agreed. Mr. King appealed this decision, arguing that the disciplinary process was so marred with due process and appearance of fairness violations that we should vacate the Board's decision. All of Mr. King's arguments lack merit. Mr. King does not dispute nor seek review of the hearing officer's findings of fact, conclusions of law, or that five of Mr. King's ethical violations independently warrant disbarment. We therefore adopt the recommendation of the Board and disbar Paul H. King (Bar No. 7370).

FACTS AND PROCEDURAL HISTORY

¶2 We suspended Mr. King from the practice of law in the state of Washington from March 9, 2005, until June 7, 2005.[1] Mr. King had previously been suspended three times for various RPC violations, including his most recent suspension from this court for two years, effective April 25, 2002.

¶3 On September 3, 2004, Kurt Rahrig signed a fee agreement retaining Mr. King in relation to potential litigation against Mr. Rahrig's former employer, Alcatel USA. The fee agreement included a clause that granted Mr. King certain fees if Mr. Rahrig abandoned the case or discharged Mr. King.

¶4 Mr. King retained local Virginia counsel, Jay Levit, to assist in filing *Rahrig et al. v. Alcatel Networks et al.* in Virginia state court. This lawsuit was later removed to the United States District Court for the Eastern District of Virginia and assigned case number 1:104-cv-01545-GBL--TCB. Mr. King was the lead lawyer in the litigation but did not apply for pro hac vice admission.

¶5 On March 9, 2005, Mr. King informed Alcatel's attorneys via e-mail that he was "taking a leave" and that pleadings should be sent to John Scannell, not Mr. King, at the same address. Clerk's Papers (CP) at 692. Mr. King did not tell Mr. Rahrig or Mr. Levit that he was "taking a leave." Despite this e-mail, Mr. King continued to act as lead lawyer for Mr. Rahrig, including obtaining litigation documents that Alcatel sent to Mr. Scannell. Mr. King never advised Mr. Rahrig to seek other counsel due to Mr. King's suspension. On March 25, 2005, Mr. King submitted a declaration to the Association stating that he had " 'wrapped up [his] affairs and closed the practice' " by March 9, 2005, and that

---

[1] This was a reciprocal suspension based on the United States District Court for the Western District of Washington's decision to suspend Mr. King for three years, effective April 25, 2002. Clerk's Papers at 690.

he had no active clients. *Id.* at 697. Mr. Levit discovered Mr. King was suspended on May 26, 2005, and informed Mr. Rahrig, who fired Mr. King on May 31, 2005.

¶6 Mr. Rahrig filed a grievance against Mr. King on May 31, 2005. Disciplinary counsel sent Mr. King a request for a response to Mr. Rahrig's grievance. Mr. King prepared a summons and complaint captioned *"Paul H. King and Roger W. Knight v. Kurt Rahrig, et al."* and attempted service on Mr. Rahrig sometime between July 18 and July 26, 2005. *Id.* at 699-700. The complaint listed a fake cause number and asserted claims and damages arising from Mr. Rahrig's firing of Mr. King. The complaint rehearsed several false statements, including that Mr. King was "licensed to practice law at all times relevant to this lawsuit" and that Mr. Rahrig fired Mr. King on March 9, 2005. *Id.* at 705. Mr. Rahrig incurred $615 in legal defense costs related to this complaint. Mr. King asserted that he never filed the lawsuit because Mr. Rahrig's suit against Alcatel was dismissed on summary judgment and there was no payable contingency fee.

¶7 Mr. King sent disciplinary counsel notice of the lawsuit on July 22, 2005, and asked for Mr. Rahrig's grievance investigation to be deferred. Disciplinary counsel denied this request on August 15, 2005. Mr. King filed a one page response to Mr. Rahrig's grievance on September 23, 2005, 83 days after Mr. King initially indicated he would respond. Disciplinary counsel issued subpoenas duces tecum on October 12 and November 2, 2005, commanding Mr. King to appear and produce documents. At some point while the Association was still investigating Mr. Rahrig's claims, disciplinary counsel deposed Mr. Mark Maurin regarding Mr. King's actions. Mr. Maurin's deposition testimony was not offered in any proceeding.

¶8 Mr. King filed a motion for protective order with the Association on November 21, 2005, arguing that (1) the Association had no jurisdiction over Mr. Rahrig's grievance because the case was pending in Virginia and (2) Mr. Maurin's testimony needed to be suppressed because Mr.

King had not received notice of the deposition. Mr. King failed to show up for his deposition the next day. Board chair Gail McMonagle denied Mr. King's motion for protective order on June 6, 2006, and sent Mr. King notice of the rescheduled deposition.

¶9 On July 20, 2006, Mr. King filed a motion to terminate his deposition. Mr. King did not appear at the deposition or produce documents as required by the subpoena. His motion was denied on August 16, 2006.

¶10 Disciplinary counsel sent Mr. King a letter stating that the deposition would resume on September 5, 2006. Mr. King's assistant, Mr. Roger Knight, sent disciplinary counsel a fax on September 1 stating that Mr. King " 'has left town for the holiday and is not expected back until after the 5th of September.' " *Id.* at 703. Mr. King did not appear or produce documents at the September 5 deposition. Mr. Knight also sent disciplinary counsel an e-mail stating that Mr. King was out of town and asking that no actions be scheduled until he returned.

¶11 On January 5, 2007, the Board review committee ordered a hearing on Mr. Rahrig's grievance. Mr. King filed a motion to vacate the order, which was denied (as was Mr. King's motion for reconsideration) by Board chair McMonagle. Mr. King filed a motion to vacate Ms. McMonagle's second denial and a separate notice of unavailability on March 12, 2007, stating that he would be unavailable until June 19, 2007. Disciplinary counsel filed a formal complaint on May 8, 2007, without ever taking Mr. King's deposition.

¶12 The formal complaint alleged 10 counts of misconduct:

**Count 1**: By failing to notify Mr. Rahrig and/or opposing counsel of his March 9, 2005 suspension from the practice of law, Respondent violated RPC 8.4(*l*) (through violation of a duty imposed by ELC 14.1).

**Count 2**: By informing his opposing counsel that he was merely "taking a leave" when in fact he had been suspended

from the practice of law, and/or by falsely representing that lawyer John Scannell had substituted for him, Respondent violated RPC 8.4(c).

**Count 3**: By submitting a declaration in an official proceeding that contained materially false statements that he knew to be false, Respondent violated RPC 8.4(b) (by committing perjury in the first degree, in violation of RCW 9A.72.020, and false swearing, in violation of RCW 9A.72.040), and/or RPC 8.4(c), and/or RPC 8.4(*l*) (through violation of a duty imposed by ELC 14.3).

**Count 4**: By continuing to engage in the practice of law after the March 9, 2005 order of suspension, and/or by failing to take the steps necessary to avoid any reasonable likelihood that anyone would rely on him as a lawyer authorized to practice law, Respondent violated RPC 5.5(e), and/or RPC 8.4(b) (through violation of RCW 2.48.180), and/or RPC 8.4(*l*) (through violation of a duty imposed by ELC 14.2), and/or RPC 8.4(j).

**Count 5**: By delivering a summons and a complaint with a fictitious cause number to Mr. Rahrig, and/or by asserting claims and/or issues therein that were frivolous, Respondent violated RPC 3.1, and/or RPC 4.4, and/or RPC 8.4(c), and/or RPC 8.4(d).

**Count 6**: By using the summons and complaint as a pretext for a deferral request intended to obstruct and delay Disciplinary Counsel's investigation of Mr. Rahrig's grievance, Respondent violated RPC 3.1, and/or RPC 4.4, and/or RPC 8.4(c), and/or RPC 8.4(d).

**Count 7**: By attempting to induce Mr. Rahrig to withdraw his grievance by threatening him with a frivolous lawsuit, Respondent violated RPC 8.4(a) and/or RPC 8.4(d).

**Count 8**: By failing to promptly respond to requests for a response to Mr. Rahrig's grievance, Respondent violated RPC 8.4(d) and/or RPC 8.4(*l*) (through violation of a duty imposed by ELC 5.3).

**Count 9**: By avoiding service of a deposition subpoena, and/or by failing to appear for his deposition on multiple occasions, and/or by failing to produce any of the documents called for by the subpoena duces tecum, Respondent violated RPC 8.4(d) and/or RPC 8.4(*l*) (through violation of duties imposed by ELC 5.3 and 5.5).

**Count 10**: By filing frivolous motions intended to obstruct and delay an investigation, and/or by disobeying orders denying those motions, Respondent violated RPC 3.1, and/or RPC 4.4, and/or RPC 8.4(d), and/or RPC 8.4(*l*) (through violation of duties imposed by ELC 5.3 and 5.5).

*Id.* at 687-89.

¶13 An Association investigator was unable to locate Mr. King at his Seattle office or his home address in Bremerton, on record with the Association. On May 8, 2007, the investigator left a copy of the summons and complaint with Joe Wolfrey, Mr. King's roommate at an address in Kenmore, which Mr. King had used as his home address. Because Mr. King had asserted that he would be at a particular address in the Philippines for several weeks,[2] service was also mailed via registered or certified mail to the Philippines address, as well as Mr. King's Seattle and Bremerton addresses of record. The Philippines mailing was picked up in June 2007, and Mr. King admitted that this service was proper.

¶14 David Schoeggl was appointed as hearing officer in July 2007. After the appointment, Mr. King amended a petition for writ of mandamus to include hearing officer Schoeggl's name.[3] Mr. King also filed a witness list that included Mr. Schoeggl, disciplinary counsel Scott Busby, the 13 members of the Board, and 5 other employees of the Office of Disciplinary Counsel. The hearing officer found that Mr. King did not have a good-faith intention to call many of these witnesses and struck disciplinary counsel, the Board members, and himself from the list. Mr. King filed a motion the month before his hearing asking Mr.

---

[2] During this period, a detective from the King County Sheriff's Office and Mr. King's Seattle landlord saw Mr. King at his Seattle office.

[3] Mr. King originally filed this petition on October 16, 2006, to obtain a writ of mandamus directing disciplinary counsel " 'to refrain from conducting secret depositions concerning John Scannell or Paul King without giving notice to both' " and to require either the chief hearing officer of the disciplinary board or the entire disciplinary committee to rule on his motions for protective orders. CP at 710. The trial court dismissed the petition for lack of jurisdiction, and the Court of Appeals affirmed.

Schoeggl to recuse himself because Mr. Schoeggl was a named party in the mandamus action. The motion was denied.

¶15 Mr. King's hearing began on April 29, 2008, and concluded on May 12, 2008. On July 22, 2008, Mr. King filed an "Appeal and Motion" challenging the order setting the hearing transcript and arguing that the transcript contained errors. *Id.* at 685-86.

¶16 The hearing officer found that counts 1-5 and 8-10 were proved by "a clear preponderance of the evidence." *Id.* at 713-17. The hearing officer also found that Mr. King had acted with dishonest motives in representing Mr. Rahrig and during the course of the Association's investigation. Mr. King continuously treated disciplinary proceedings as a " 'cat-and-mouse' game" by failing to comply with orders, cooperate in postcomplaint discovery, and "repeatedly waiting until the last minute to raise objections that could have been raised months earlier." *Id.* at 712. Mr. King made "approximately seventeen separate efforts (including appeals) to halt or delay the hearing," most of which were frivolous, resulting in delay and wasted resources. *Id.*

¶17 Relying on the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 ed. & Supp. 1992), the hearing officer recommended Mr. King's disbarment for counts 1, 3, 4, 5, and 10, suspension for counts 8 and 9, and reprimand for count 2, and the Board adopted these recommendations.

ANALYSIS

¶18 Mr. King challenges none of the hearing officer's findings of fact, and " '[u]nchallenged findings of fact are treated as verities on appeal.' " *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 66, 217 P.3d 291 (2009) (quoting *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007) (citing *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 735, 122 P.3d 710 (2005))). Mr. King's claims are

divisible into two categories: due process and appearance of fairness violations. Questions as to whether undisputed facts violate due process or the appearance of fairness doctrine are legal and reviewed de novo. *See City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

¶19 Many of Mr. King's claims relate to court rules. "We interpret a court rule as though it were enacted by the legislature, giving effect to its plain meaning as an expression of legislative intent." *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007).

## I. Due Process

¶20 Mr. King claims his due process rights were violated because the Association allegedly violated the Rules for Enforcement of Lawyer Conduct (ELC). He claims he did not obtain a fair hearing and the violations deprive the Association of jurisdiction to hear his complaint. Mr. King's rights were not violated, and the Association had jurisdiction over the disciplinary proceedings.

### A. Review Committee

¶21 Mr. King claims that the review committee lacked authority to order a hearing regarding Mr. Rahrig's grievance because the nonlawyer member of the committee was not present when the decision to order the review hearing was made. Mr. King argues that the nonlawyer must be present because a nonlawyer's perspective is vital to the decision process under the rules. Under ELC 2.4(b), "[e]ach review committee consists of two lawyers and one nonlawyer."

¶22 By its plain language, ELC 2.4(b) requires a committee to consist of three members. It says nothing about how many are required to be in daily attendance. Here, the review committee did consist of three members, so ELC 2.4(b) was not violated. No rule requires all members to vote, and Mr. King's argument as to the role of the nonlawyer member is not supported by the text of the rules

or any other evidence.[4] The review committee's decision to order a hearing did not violate ELC procedures.

## B. Summons and Service of Complaint

¶23 Mr. King claims that the hearing officer had no jurisdiction over Mr. King because he was not personally served with the complaint in violation of ELC 10.3(a)(2) and he was allowed only 20 days to file an answer, in violation of Superior Court Civil Rule (CR) 4(d)(4). Mr. King is incorrect.

### 1. Personal Service

■ ¶24 ELC 10.3(a)(2) requires that a lawyer subject to a formal complaint be personally served with that complaint and a notice of answer for a hearing to commence. If the respondent cannot be found in Washington State, personal service is accomplished by "leaving a copy at the respondent's place of usual abode in Washington State with a person of suitable age and discretion then resident therein" or by mailing via certified or registered mail to respondent at his "last known place of abode, office address maintained for the practice of law, post office address, or address on file with the Association." ELC 4.1(b)(3)(B)(i), (ii).

¶25 The record shows that Mr. King was not found for purposes of service of process, either in or out of Washing-

---

[4] The ELC were preceded by the Rules for Lawyer Discipline (RLD), which were preceded by the Discipline Rules for Attorneys (DRA). The requirement for nonlawyers to participate in disciplinary-related decisions first arose in former RLD 2.4(a) (1997). ELC 2.4(b) is derived from former RLD 2.4(a) without substantive change. 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE authors's cmt. at 527 (6th ed. 2004). Former DRA did not provide for nonlawyers to take part in decisions to hold disciplinary hearings. Instead, former DRA provided for a "Local Administrative Committee," which was composed of lawyers only and had the duty to investigate "alleged or apparent violation[s] of the rules of professional conduct" and submit a report on the matter to the Board. Former DRA 2.1(c)(1) (1975). In contrast, review committees under former RLD 2.4 and ELC 2.4 do not conduct investigations, but instead review investigative reports and decide whether a disciplinary hearing is appropriate. There is thus a substantial difference between local administrative committee duties under former DRA and review committee duties under former RLD and ELC.

ton State. Service by mail or by leaving a copy with a suitable person at Mr. King's abode is thus proper.

¶26 Here, Mr. King identified the Kenmore residence as his abode within the previous year and the roommate who received service verified that Mr. King lived there. Mr. King does not contest that the Kenmore address was his address, that Mr. Wolfrey was his roommate, or that service on Mr. Wolfrey satisfied ELC requirements. Mr. King was thus properly served in Kenmore, Washington, on May 8, 2007. Mr. King agreed that service in the Philippines in June 2007 was also proper.

### 2. 20-Day Response Period

■ ■ ¶27 Mr. King is incorrect that civil court rules granted him more than 20 days to file an answer to the complaint. The CRs provide guidance for disciplinary proceedings and sometimes directly apply. ELC 10.1(a). However, ELC procedures trump conflicting CR procedures in disciplinary proceedings when the ELC does not expressly invoke CR procedures. ELC 1.1. Mr. King argues that because CR 4(d)(4) allows 90 days to file and serve an answer to a complaint served by mail, the 20-day limit imposed by the notice of answer was a due process violation. ELC 10.5(a) states that "[w]ithin 20 days of service of the formal complaint and notice to answer, the respondent lawyer must file and serve an answer." ELC 4.1(b)(3)(B) and (C) govern service by mail in disciplinary proceedings for parties not found in Washington State and make no exception to the 20-day rule, nor do they invoke CR procedures.[5] Because 20 days is the proper time period for filing an answer to a complaint served by mail, imposing this time limit on Mr. King did not violate his due process rights. Further, though Mr. King was late in filing an answer, he received no sanction, so there is no harm to remedy.

---

[5] In contrast, ELC 4.1(b)(3)(A), which governs service on lawyers found in Washington State, expressly does invoke CR procedures.

## C. Mark Maurin's Deposition

¶28 Mr. King claims the Association's ex parte deposition of Mark Maurin was improper because Mr. King was not given notice and because Mr. King was denied his right to cross-examine a witness. Mr. Maurin did not testify at the hearing, so Mr. King had no applicable right of cross-examination.

¶29 The deposition itself was conducted before the formal complaint was filed. The Association could have sent Mr. King notice of the deposition but did not. However, because the deposition was not used in the proceeding and Mr. Maurin did not testify, no due process violation occurred.

## D. Board Chair Ms. McMonagle's Decisions

¶30 Mr. King claims that Board chair Ms. McMonagle acted beyond her authority in denying Mr. King's motion to vacate the committee's findings and Mr. King's motion for reconsideration of that denial because such decisions are for the Board. The entire Board or a quorum thereof, ELC 2.3(b), is charged with reviewing decisions if a party files a notice of appeal within 15 days of service of the decision. ELC 11.2(b). Mr. King filed both motions in question within the 15-day time limit.

¶31 However, the meaning of "[d]ecision" as used in ELC 11.2(b) is restricted to "the hearing officer or panel's findings of fact, conclusions of law, and recommendation."[6] ELC 11.2(a). The review committee's decision and order falls outside this category, so the rules do not require the full Board's attention. Mr. King's due process rights were not violated.

## E. Hearing Schedule

¶32 A hearing schedule may be entered into by agreement of the parties or by motion as required by ELC

---

[6] "Panel" refers to "a hearing panel," which, in some circumstances, will preside over a disciplinary hearing. ELC 1.3(k), 10.2(a)(2).

10.12(b). If the schedule is requested via motion, ELC 10.12(b) requires the motion to include certain, specific details. A party may move for an order setting the hearing schedule "after the time to file the answer has expired," *id.*, which is 20 days. *See supra* Part I.B. The Association moved to set a hearing date after the time to file the answer expired. Mr. King challenged the motion but did not assert that any technical requirements of ELC 10.12(b) were violated. Upon review of the motion, it appears that it complied with all technical aspects of ELC 10.12(b). As the timing of the Association's motion was proper, no due process violation occurred.

### F. Inability To File Reply Brief

¶33 Mr. King claims he was denied due process when he was not allowed to file a reply brief to the Association's answer to Mr. King's motion to vacate the review committee's decision ordering a hearing. Mr. King's reply brief was received by the Association (and filed) *after* Mr. King's motion was denied. Further, it was considered in conjunction with Mr. King's motion for reconsideration. No due process violation occurred.

### G. Accuracy of Audiotapes

¶34 Mr. King alleges his due process rights have been violated because his "Appeal and Motion and Declaration for Review of Audio Tapes for Accuracy Under ELC 11.4" has not been ruled upon. Br. of Att'y at 46. Mr. King makes no argument that the three changes he proposes would have any substantive effect on the hearing testimony, does not contest any of the hearing officer's findings of fact, and does not allege procedural violations during the hearing itself. This claim fails.

### II. Appearance of Fairness

¶35 Mr. King argues that hearing officer Schoeggl was "disqualified for lack of appearance of fairness." Br. of Att'y at 1. Attorneys subject to disciplinary proceedings are

"entitled to a hearing before a hearing officer who [is] not only fair, but appear[s] to be fair." *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 313-14, 962 P.2d 813 (1998) (citing *Brister v. Council of Tacoma*, 27 Wn. App. 474, 619 P.2d 982 (1980), *review denied*, 95 Wn.2d 1006 (1981)). A proceeding appears to be fair if it would so appear to "a reasonably prudent and disinterested person." *Haskell*, 136 Wn.2d at 314 (citing *Chi., Milwaukee, St. Paul, & Pac. R.R. v. Wash. State Human Rights Comm'n*, 87 Wn.2d 802, 557 P.2d 307 (1976). If hearing officers do not appear to be fair, they are required to disqualify themselves. ELC 2.6(e)(4)(A).

¶36 We presume that courts are fair and will properly "discharge[ ] [their] official duties without bias or prejudice." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) (citing *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967)). This presumption is inherent in the role of a judge. Hearing officers are not judges, but we trust and empower them to preside over proceedings, take evidence, make findings of fact, and do other duties analogous to the role of a judge. The presumption of fairness for judges likewise applies to hearing officers in attorney disciplinary proceedings.[7]

¶37 Mr. King identifies a number of issues he asserts would cause a reasonably prudent and disinterested person to view hearing officer Schoeggl's participation in Mr. King's disciplinary proceedings as unfair. Mr. King's assertions are meritless and his appearance of unfairness claim fails.

A. Mr. King's Lawsuit

¶38 Mr. King asserts that because hearing officer Schoeggl was adverse to Mr. King in a lawsuit that existed during Mr. King's disciplinary proceedings, Mr. Schoeggl lacked the appearance of fairness. Mr. King added Mr.

---

[7] However, because hearing officers often are also practicing attorneys, conflicts of interest and other factors that can imperil the appearance of fairness may have a higher probability of occurring.

Schoeggl's name to a pending lawsuit only after Mr. Schoeggl was appointed as hearing officer. Given the relief sought by Mr. King's suit, there appears to be no meritorious reason for adding Mr. Schoeggl as a party.

¶39 One cannot manufacture an appearance of unfairness by merely filing a lawsuit against the presiding official. *See, e.g., United States v. Pryor*, 960 F.2d 1, 3 (1st Cir. 1992) ("It cannot be that an automatic recusal can be obtained by the simple act of suing the judge." (citing *Ronwin v. State Bar of Ariz.*, 686 F.2d 692, 701 (9th Cir. 1982), *cert. denied*, 461 U.S. 938 (1983))). Mr. King's suit against Mr. Schoeggl casts no taint on Mr. Schoeggl's appearance of fairness and is not grounds for disqualifying Mr. Schoeggl as the hearing officer, alone or in concert with other allegations.

### B. Failure To Report Lawyer Misconduct

¶40 Mr. King asserts that hearing officer Schoeggl was required to recuse himself under Code of Judicial Conduct (CJC) Canon 3(C)(2) and ELC 2.6(e)(3)(B), because Mr. Schoeggl was aware of disciplinary counsel's ex parte deposition of Mark Maurin yet failed to take appropriate action. The Maurin deposition was proper, so no CJC or ELC violation is implicated.[8]

### C. Striking of Witnesses

¶41 On disciplinary counsel's motion, hearing officer Schoeggl struck himself, disciplinary counsel, and 13 former and current members of the Board from Mr. King's witness list. Mr. Schoeggl noted that the record provided no justification for calling any of these witnesses and that Mr. King had "not made any showing that any of these witnesses [had] relevant factual knowledge that they could testify to as witnesses." CP at 312. Mr. King now asserts

---

[8] Further, because the Maurin deposition was proper, King's claim that Schoeggl improperly proceeded with the disciplinary hearing despite knowing about an undecided motion for a protective order to suppress the fruits of the deposition is meritless.

that disciplinary counsel Busby was the "sole witness in [King]'s case on enhanced penalties." Br. of Att'y at 15. Mr. King makes no further argument as to what he expected Busby to testify about or why he could not find a different witness to testify about enhanced penalties. Mr. King fails to explain why Mr. Schoeggl's or the Board's exclusion from testifying was harmful. Mr. Schoeggl's order was reasonable and did not taint his appearance of fairness.

### D. Notice of Unavailability

¶42 Mr. King asserts that hearing officer Schoeggl improperly ignored Mr. King's notice of unavailability. Mr. King filed two such notices stating Mr. King would be "out of the area and unavailable" for certain dates and requested that disciplinary counsel and hearing officer Schoeggl take no official action relating to the case during these periods. CP at 85, 270. Mr. King does not have authority to unilaterally bind disciplinary counsel or a hearing officer or to suspend a disciplinary hearing merely by filing a "notice of unavailability."

### E. Other Issues

¶43 Mr. King claims that hearing officer Schoeggl and disciplinary counsel were both represented by an Association attorney during a prior proceeding and that Mr. Schoeggl had an appearance of commingling investigative and prosecutorial duties. Mr. King does not support these claims with any citations to the record or any coherent argument. Bald accusations are insufficient to support claims for appearance of fairness violations, so these claims fail.

### III. Proper Sanction

¶44 Mr. King does not dispute or seek review of the hearing officer's reasoning and conclusions that Mr. King's actions violated multiple ethical requirements or that a number of those violations independently warrant disbarment. Lawyers have a right to appeal a Board decision

recommending suspension or disbarment under ELC 12.3(a), but lawyers have no duty to challenge disciplinary decisions and this court has no duty to review an issue that has not been contested on appeal. Because there is no controversy or duty to act, these issues are not justiciable and any opinion rendered thereon would be advisory.

## Conclusion

¶45 We adopt the Board's uncontested findings and recommendations and hereby disbar Paul H. King. Mr. King's due process rights were not violated by the procedures prior to, during, and subsequent to the disciplinary hearing. Hearing officer Schoeggl's conduct did not violate the appearance of fairness doctrine.

Madsen, C.J., and C. Johnson, Alexander, Chambers, Owens, Fairhurst, and Stephens, JJ., concur.

¶46 Sanders, J. (concurring) — Mr. Paul King was entitled to notice of Mr. Mark Maurin's deposition. ELC 5.5 provides:

> **(a) Procedure.** Before filing a formal complaint, disciplinary counsel may depose either a respondent lawyer or a witness, or issue requests for admission to the respondent. To the extent possible, CR 30 or 31 applies to depositions under this rule. CR 36 governs requests for admissions.

¶47 CR 30(b)(1) requires no less than five days' notice "to every other party to the action and to the deponent." ELC 5.5(a) provides this rule is applicable "[t]o the extent possible . . . ." So if it is not "possible" to serve a party to the action because the targeted lawyer has not yet received a formal complaint, then I can think of no reason why he should not be given notice of the deposition and an opportunity to participate; it is only fair. I have found no precedent whatsoever that supports a different reading of this rule.

¶48 Nevertheless, because the deposition was not used in the proceeding and Mr. Maurin did not testify, I do not see how this procedural error could in any way affect the final result.

¶49 Therefore I concur.