IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39158-2-III |
| GREGORY CLARK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| RUBY CLARK, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Gregory Clark and Ruby Peasley, née Clark, married in 2018 and separated in 2020. The parties lacked substantial assets and debts. In 2022, trial was held on Mr. Clark's petition for dissolution of the parties' marriage. At the conclusion of trial, the court granted Ms. Peasley a $12,000 judgment against Mr. Clark. The judgment was in lieu of awarding Ms. Peasley spousal maintenance or a portion or Mr. Clark's retirement account. Mr. Clark appeals, arguing that the trial court abused its discretion in granting Ms. Peasley the judgment.

We affirm.

## FACTS

Mr. Clark and Ms. Peasley wed in Coulee Dam, Washington, on April 21, 2018, and separated on or about October 10, 2020. The parties had no children together and

relatively little in the way of assets and debts. During the marriage, the couple purchased a home in Grand Coulee, Washington. They resided together in the home for about one year prior to their separation. On June 4, 2019, Ms. Peasley executed a quitclaim deed, granting her interest in the home to Mr. Clark as his separate property.

Mr. Clark is employed as a senior facilities engineer for the Colville Confederated Tribes, earning $30.72 per hour. During the marriage, Mr. Clark earned retirement benefits through his employer. Ms. Peasley works as a housekeeper, earning minimum wage. Prior to the marriage, Ms. Peasley lived and worked in Lewiston, Idaho. There, she was employed as an assembler at Vista Outdoors, earning approximately $38,000 per year. Following separation, Ms. Peasley testified she has experienced homelessness.

On June 1, 2022, both Ms. Peasley and Mr. Clark appeared for their dissolution trial without the benefit of counsel. At issue was property and debt characterization and distribution, and Ms. Peasley's request for spousal maintenance in the amount of $1,000 per month for one- year.

In his opening statement, Mr. Clark requested that he be awarded, as his separate property, the home and all bank accounts and retirement accounts in his name. Mr. Clark also requested he be awarded any personal property in his possession. Likewise, Mr. Clark asked that all bank accounts and retirement accounts in Ms. Peasley's name be awarded to her, as well as any personal property in her possession. Mr. Clark agreed to assume the approximately $3,000 of community debt in exchange for not having to pay

spousal maintenance. Lastly, Mr. Clark requested both he and Ms. Peasley retain the vehicles in their possession.

Ms. Peasley testified that prior to marriage she earned $38,000 annually. She testified that during the marriage she liquidated her retirement account to pay bills and to purchase bed linens and dishes for the benefit of the marital community. Ms. Peasley testified that following the parties' separation she experienced homelessness and was only able to earn $6,800 per year. Ms. Peasley claimed that she paid half the mortgage payments during the marriage.

As to the parties' personal property, Mr. Clark testified that Ms. Peasley took most of the household goods that he estimated were worth $6,000 to $7,000. Ms. Peasley testified that the household goods she received were worth about $3,500. The trial court valued the household goods retained by Ms. Peasley at $5,000.

In regard to the house, Mr. Clark testified that Ms. Peasley signed a quitclaim deed granting her interest in the home to him so that they could qualify for the home loan through Tribal Credit. Mr. Clark testified, "It had everything to do with Tribal Credit. She's not a tribal member. The bank that we got it through was a tribal. I'm a tribal member. And I believe that's why she was signing it." Rep. of Proc. (RP) at 64. Ms. Peasley disputed Mr. Clark's testimony. Ms. Peasley testified:

> The Quit Claim Deed was part of a packet of paperwork which I quickly was signing so that we could get approved for the HUD loan that we desperately needed to get into the house. . . .

> It was not even explained to me what I was signing, to be honest with you. It was [Mr. Clark] met me at the Tribal Credit. Said, I need you to sign all of these papers so that we can get the loan. . . .
>
> *At no point did I ever think that I was signing away any kind of right to the house.* I loved that house.

RP at 61 (emphasis added). Mr. Clark also testified that he paid the $780 monthly mortgage payment and $190 property casualty insurance payment from income he earned with the Colville Tribal Government.

At the outset of the trial court's oral ruling, it noted that neither party supplied "any sort of actual relevant financial information." RP at 77. The court found that the home was Mr. Clark's separate property but stated that the circumstances surrounding the quitclaim deed were "dubious." RP at 78. The trial court denied Ms. Peasley's request for spousal maintenance and awarded each party the vehicle in their possession. The court further ruled:

> At the date of separation, the value of the house was probably somewhere about 190,000, in there. I think the husband testified it was worth 210. Wife testified it's worth 180. Somewhere in between is, probably, 190, 195,000. *It has about 45,000 of equity in the house. Now, the husband made payments from community funds to augment that.*
>
> *What the Court is going to do is this: I'll find that the wife received extra personal property, household goods and items, the value of that in the neighborhood of about $5,000.* There was testimony the wife thought she only got a couple thousand dollars more than the husband. The husband thought that the wife got about 6 or 7,000 more. *The Court is going to find she got about [$]5,000 more of separate—of community household goods and furnishings.*
>
> . . . .

4

No. 39158-2-III
*In re Marriage of Clark*

> . . . [Mr. Clark] is going to take the—and I will award the husband the Coulee Dam Federal Union and the Les Schwab debts that amounts to about $3,000.
>
> . . . .
>
> So, that takes us to: Does there need to be an equalizing payment to kind of offset the property that's awarded to the husband, recognizing that there were community funds that were expended to pay for the house? *Even if it is a separate property item, then there needs to be some reimbursement for that. There's also the issue of the retirement account.*
>
> . . . .
>
> So, to make a fair and equitable division, recognizing that all those factors the Court just said, *I am going to award an offsetting judgment to the wife. So, sir, I'm going to award a $12,000 judgment from you to the wife. That takes care of the 401(k) retirement account, a portion of which was community property she needs to be reimbursed for. Again, I don't really have a whole lot of good financial information.*

RP at 79-80, 82-83 (emphasis added).

The court issued written findings of fact, conclusions of law, and a final decree of dissolution. Mr. Clark appeals.

### ANALYSIS

Mr. Clark argues that the trial court abused its discretion in granting Ms. Peasley a $12,000 judgment against him. We disagree.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). "This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion." *Id*. "A manifest abuse of discretion occurs when the discretion was

5

exercised on untenable grounds." *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007). If the court's decree results in a patent disparity in the parties' economic circumstances, then a manifest abuse of discretion has occurred. *Id.* "The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).

RCW 26.09.080(1)-(4) states that in a proceeding for dissolution of a marriage the court must make a just and equitable distribution of property and in doing must consider: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property is to become effective. This list of factors is nonexclusive.

As part of a just and equitable distribution, the court may award part or all of the separate property or debts of one spouse to the other spouse. RCW 26.09.080. A just and equitable distribution requires a fair consideration of all circumstances and the future needs of both parties. *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

Mr. Clark argues that if the court granted the $12,000 judgment as a means of balancing contributions made to his retirement during the marriage, it was error because there was no evidence of contributions. Contrary to his argument, Mr. Clark testified that

he earned retirement benefits during the marriage, yet failed to disclose the amount. Consequently, the trial court received little evidence to fashion its property distribution. The trial court found a portion of the $12,000 judgment was necessary to compensate Ms. Peasley for retirement benefits earned by the marital community. The trial court's judgment was not based on untenable grounds.

Mr. Clark next argues that if a portion of the $12,000 judgment was to reimburse Ms. Peasley for mortgage and property casualty insurance payments made by the community during the marriage, the decision was erroneous as Ms. Peasley received the reciprocal benefit of residing in the home. The trial court found that the house was Mr. Clark's separate property but that "the payments for the house, the down payment, [and] the ongoing payments, all came from [Mr. Clark]'s earnings, which are community property." RP at 77. Accordingly, the trial court found that Mr. Clark "us[ed] community funds to augment a separate property asset" and that "[e]ven if it is a separate property item, then there needs to be some reimbursement [to Ms. Peasley] for that." RP at 78, 82. The court also recognized that the facts surrounding why Ms. Peasley quitclaimed her interest in the house to Mr. Clark were "dubious." RP at 78.

When parties to a dissolution have used community funds to make loan payments, one party may be entitled to a community right of reimbursement. *See In re Marriage of Kile & Kendall*, 186 Wn. App. 864, 884, 347 P.3d 894 (2015). Because the trial court found that Mr. Clark used community assets to augment his separate property, granting

7

Ms. Peasley equitable reimbursement does not create a patent disparity in the parties' economic circumstances and was not an abuse of discretion.

Mr. Clark claims that, in violation of RCW 26.09.080, the trial court erred in considering marital misconduct when it divided the property. Mr. Clark also contends that the court abused its discretion if it ordered the $12,000 judgment to repay debt he allegedly owed to Ms. Peasley's children. We disagree with both contentions.

Mr. Clark points to no evidence in the record demonstrating that the court considered fault or marital misconduct. Contrary to Mr. Clark's claim, the court affirmatively told Ms. Peasley, as she began to discuss Mr. Clark's "girlfriend" allegedly moving into the home, that "fault doesn't turn into [this]." RP at 58. As to the alleged debt to Ms. Peasley's children, testimony was presented on this point but the court did not mention it in its oral ruling or final decree of dissolution. According to the court's oral ruling, the $12,000 judgment was intended to reimburse Ms. Peasley for community funds used to pay the mortgage and for the community's interest in Mr. Clark's retirement account.

Mr. Clark argues the trial court abused its discretion by disproportionately allocating community property to Ms. Peasley and the $12,000 judgment was unsupported by facts or law. The property division was not disproportionately in favor of Ms. Peasley. The trial court found the community assets consisted of an unknown value in Mr. Clark's retirement account, $5,000 in household property, and two vehicles. The

No. 39158-2-III
*In re Marriage of Clark*

community debt consisted to two retail accounts totaling $3,000. The trial court found the house was Mr. Clark's separate asset with a net value of $45,000.

Mr. Clark left the marriage with his retirement account, $45,000.00 in separate property, his vehicle, and $3,000.00 of debt. Ms. Peasley left the marriage without any significant separate assets, $5,000.00 in household property, and her vehicle. In order to resolve the economic disparity between the parties, the court appropriately awarded Ms. Peasley a $12,000.00 judgment. Indeed, RCW 26.09.080(4) requires the court to consider the economic circumstances of each spouse at the time the division of property is to become effective. Economically, Mr. Clark left the marriage with the house and an ability to earn $30.72 per hour, while Ms. Peasley experienced homelessness and earned minimum wage.

Lastly, Mr. Clark argues that the court had a "pro-female or anti-male gender bias." Opening Br. of Appellant at 38. Mr. Clark's claim is unsupported by the record. "Due process, the appearance of fairness doctrine and Canon [2.11] of the Code of Judicial Conduct . . . require a judge to disqualify himself if he is biased against a party or his impartiality may reasonably be questioned." *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). However, there is a presumption that a judge performs his or her functions regularly and properly without bias or prejudice. *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967); *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993). Thus, a party seeking to overcome that presumption must

9

offer evidence of a judge's actual or potential bias. *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000); *Dominguez*, 81 Wn. App. at 329. Here, Mr. Clark offers no evidence to support the notion that the court was biased against him due to his gender or any other reason. Thus, his claim fails.

Mr. Clark requests attorney fees and costs under RCW 26.09.140 and RAP 18.1 as the prevailing party. Mr. Clark has not prevailed in this appeal and he is therefore not entitled to attorney fees and costs.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Fearing, C.J.


_____
Pennell, J.