[No. 76198-1.    En Banc.]
Argued October 25, 2005.    Decided April 20, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO B. CANTU, *Petitioner*.

*Susan M. Gasch* (of *Gasch Law Office*), for petitioner.

*John D. Knodell, Prosecuting Attorney,* and *Carole L. Highland* and *Teresa J. Chen, Deputies,* for respondent.

¶1 CHAMBERS, J. — Seventeen-year old Antonio B. Cantu was convicted of residential burglary following allegations he entered his mother's home, broke into her deadbolt-locked bedroom door, and took some of her possessions. We are again asked to interpret a statute that could be construed to impermissibly shift the burden of persuasion

to the accused and relieve the State of its obligation to prove each element of the crime.[1]

¶2 We held in *State v. Deal,* 128 Wn.2d 693, 699-700, 911 P.2d 996 (1996) (citing *State v. Brunson,* 128 Wn.2d 98, 107, 905 P.2d 346 (1995)), that, under certain circumstances, RCW 9A.52.040 creates a permissive, rather than a mandatory, presumption of criminal intent. A permissive presumption permits, but does not require, an inference of criminal intent, while a mandatory presumption mandates such inference unless it is rebutted. Permissive presumptions do not necessarily deprive the State of its obligation to prove every element of the crime, and thus the statute is not facially invalid. However, in this case we cannot say that the State bore the burden of proving every element of the crime charged. The record suggests that the court improperly applied a mandatory presumption of criminal intent. We also hold that a child's privilege to enter the family home, or any portion inside, may be expressly or impliedly limited. We reverse, vacate the conviction, and remand for proceedings consistent with this opinion.

## I

## FACTS

¶3 Cantu's mother, Noyola Moncada, lives in Moses Lake with her boyfriend and daughter, Sophia. One morning in February 2003, Corporal Steven Miers of the Moses Lake Police Department responded to a call from the home. Sophia told Miers that Cantu had just left after breaking into their mother's bedroom by kicking in the dead-bolt-locked door. Miers saw damage to the bedroom door consistent with Sophia's account. Sophia also reported to Miers

---

[1] Petitioner Cantu raised this argument in his supplement brief. Suppl. Br. of Pet'r at 3. Under RAP 13.7(b), parties may not introduce new issues after the petition for review is granted. However, this court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision. *See Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972). To reach a proper decision in this matter and clarify case law, it is necessary to consider this issue. Furthermore, it is arguably within the scope of the petition. The State did not object to our consideration of this issue.

that Cantu had taken items, including his own alarm clock, out of their mother's bedroom.[2] Shortly afterward, Moncada came home and told Miers that money, beer, and pain pills had been taken from her bedroom. Moncada testified that at the time of the incident, Cantu was not living with her, did not have her permission to enter her bedroom, and that the missing beer, money, and pills were returned by Moncada's nephew later that same day.[3]

¶4 Cantu testified that he went to his mother's home on February 6, 2003, to pick up some clothes. Cantu explained that while he was inside the house and playing with his dogs, he ran into his mother's bedroom door and accidentally broke the door. Cantu asserted he entered his mother's bedroom only to shut the door and did not remove anything.

¶5 Cantu was charged by information with one count each of residential burglary, theft in the third degree, minor in possession of alcohol, and possession of a legend drug. The court found Cantu guilty of residential burglary but found insufficient evidence existed as to the other three counts. The Court of Appeals affirmed. *State v. Cantu*, 123 Wn. App. 404, 98 P.3d 106 (2004). Cantu's petition to this court for review was granted. *State v. Cantu*, 154 Wn.2d 1002, 113 P.3d 481 (2005).

## II

### UNLAWFUL ENTRY

■ ■ ¶6 First, we must decide whether a license to enter a dwelling may be impliedly limited. This is a question of law reviewed de novo. *State v. Hanson*, 151 Wn.2d 783, 784, 91 P.3d 888 (2004). Cantu argues that implied limitations are not enough; that his mother did not expressly prohibit him from entering her bedroom, and that

---

[2] Sophia partially recanted on the stand.

[3] It is unclear from the record how Moncada's nephew came into possession of the items taken from her bedroom. In addition, Sophia testified that it was Cantu who had returned the missing money to Moncada after the incident.

the dead-bolt-locked door did not give him sufficient notice. For support, Cantu cites *State v. Steinbach,* 101 Wn.2d 460, 463, 679 P.2d 369 (1984); *State v. Crist,* 80 Wn. App. 511, 514-15, 909 P.2d 1341 (1996); and *State v. Jensen,* 57 Wn. App. 501, 506, 789 P.2d 772 (1990). The State argues that express limits are not required and that the locked dead bolt was sufficient. We agree with the State.

¶7 As part of its proof of residential burglary, the State bore the burden of showing that Cantu entered and remained unlawfully in Moncada's home with the intent to commit a crime against a person or property. RCW 9A-.52.025(1). A person "enters or remains unlawfully" when he is not licensed, invited, or otherwise privileged to enter or remain on the premises. RCW 9A.52.010(3).

¶8 A juvenile is presumed to have a license to enter his parents' home. *Steinbach,* 101 Wn.2d at 462-63. Because Cantu was 17 years old at the time, we will presume he had a license to enter Moncada's home. However, even though Cantu may have had a license to be in the home, an unprivileged entry into a locked room may still constitute unlawful entry for purposes of burglary. *Crist,* 80 Wn. App. at 514-15; *see generally State v. Collins,* 110 Wn.2d 253, 751 P.2d 837 (1988).

¶9 In *Crist,* Division Two of the Court of Appeals found a juvenile unlawfully entered his father's locked room when the juvenile had a license to enter certain parts of the home but was expressly told that he was not to enter his father's room. *Crist,* 80 Wn. App. at 513-16. In *Jensen,* Division One of the Court of Appeals found that there was substantial evidence to support the trial court's finding that a juvenile did not have permission to enter his parents' home in their absence when his parents " 'made it very clear that they did not want him in the home unattended.' " *Jensen,* 57 Wn. App. at 506 (quoting finding of fact). In *Steinbach,* this court found that a juvenile's entry into her mother's home was not unlawful since neither the mother nor the alternative residential placement orders absolutely prohibited the

juvenile from being in the home. *Steinbach,* 101 Wn.2d at 462-64.

¶10 While Cantu is correct that *Crist, Jensen,* and *Steinbach* all involved some sort of express limits, no Washington court has held that to find an unlawful entry, express limits on the juvenile *must* exist. The *Crist* court explained that the privilege could be limited either expressly or impliedly. *Crist,* 80 Wn. App. at 515. We agree and hold that a child's license to enter the family home, or any room within, may be limited expressly or by clear implication. Since Moncada's locked bedroom door gave Cantu clear implied notice that any permission to enter the home did not extend to her bedroom, there was sufficient evidence to find an unlawful entry. We find no error.

III

MANDATORY V. PERMISSIVE INFERENCES

¶11 Basic principles of due process require the State to prove every essential element of a crime beyond a reasonable doubt. *Deal,* 128 Wn.2d at 698 (quoting *State v. Hanna,* 123 Wn.2d 704, 710, 871 P.2d 135 (1994)). Thus, the State bore the burden of proving every element of burglary, including criminal intent. Cantu contends that the trial judge employed an impermissible mandatory presumption, shifting the burden of persuasion to Cantu to show lack of criminal intent. "The burden of persuasion is deemed to be shifted if the trier of fact is required to draw a certain inference upon the failure of the defendant to prove by some quantum of evidence that the inference should not be drawn." *Deal,* 128 Wn.2d at 701 (citing *Sandstrom v. Montana,* 442 U.S. 510, 517, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). Cantu maintains that the Court of Appeals impermissibly applied a mandatory presumption in this case when it held: "the defense offered no evidence to *rebut* the *statutory inference of* [criminal] *intent.*" *Cantu,* 123 Wn. App. at 410 (first emphasis added).

¶12 The State may use evidentiary devices, such as presumptions and inferences, to assist it in meeting its burden of proof, though they are not favored in criminal law. *Hanna,* 123 Wn.2d at 710; *Sandstrom,* 442 U.S. at 523-24. We have previously approved the permissive inference of intent to commit a crime "whenever the evidence shows a person enters or remains unlawfully in a building." *State v. Grimes,* 92 Wn. App. 973, 980 n.2, 966 P.2d 394 (1998) (citing *Brunson,* 128 Wn.2d at 107); *see also Deal,* 128 Wn.2d at 699-700. The permissible inference of criminal intent is found in RCW 9A.52.040.

¶13 The statute provides that:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building *may* be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040 (emphasis added). Again, "when permissive inferences are only part of the State's proof supporting an element and not the 'sole and sufficient' proof of such element, due process is not offended if the prosecution shows that the inference more likely than not flows from the proven fact." *Deal,* 128 Wn.2d at 700 (citing *Brunson,* 128 Wn.2d at 107).

¶14 However, mandatory presumptions are more troubling. While RCW 9A.52.040 contains a constitutionally valid permissive inference, it may also be read to unconstitutionally shift the burden of persuasion to the defendant, as it did when the jury instructions included the specific statutory language, " 'unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent.' " *Deal,* 128 Wn.2d at 704; *see* RCW 9A.52.040. We held the inclusion of this language, "essentially requir[ed] the Defendant to either introduce evidence sufficient to rebut the inference that he remained on the premises with intent to commit a

crime, or concede that element of the crime." *Deal,* 128 Wn.2d at 701; *see also* RCW 9A.52.040. "In other words, a reasonable juror could have concluded that once [the defendant's] presence on the premises was shown, a finding that he intended to commit a crime was compelled, absent a satisfactory explanation by [the defendant] as to why he was on the premises." *Deal,* 128 Wn.2d at 701.

¶15 In this case, while the record is not conclusive, it appears to us that the court applied a mandatory presumption to find Cantu's intent was criminal. We note in passing that the text of RCW 9A.52.040 is unfortunate and, as we explained in *Deal,* can be misleading. *Deal,* 128 Wn.2d at 702. In his own words, the trial judge seemed to have found Cantu's intent criminal on the belief that Cantu was unable to provide sufficient evidence to rebut the presumption. Statements made by the prosecutor and the judge near the close of the trial support our conclusion that the trial court improperly placed the burden on Cantu to prove his innocence—instead of the State having to prove his guilt. For instance, in discussing the statutory inference provided in RCW 9A.52.040, the prosecutor initially stated, "[RCW] 9A-.52.040, and burglary is unique . . . a person [who] enters or remains unlawfully in a building, and [in this case], in the bedroom, may be inferred to have acted with [criminal] intent. And then the burden actually shifts [to Cantu] to show evidence satisfactory that the entry was made without such criminal intent." Report of Proceedings (RP) at 69. Subsequently, the prosecutor corrected herself, saying, "[the] [i]nference of an intent to commit a crim[inal] act from [an] unlawful entry is not shifting the burden because the inference is permissible, not mandatory." RP at 71. However, the prosecutor continued stating, "[s]o, um, it's [a] permissible inference that the court can find that an illegal entry should have some explanation to it. And [Cantu's] explanation at this point in time is lame, Your Honor." *Id.* In addition, in the trial court's oral decision, the judge stated, "The assessment, first off [is that Cantu] broke into his mother's bedroom and he was not living there, [and] did not

have permission to be there and [that] he kicked . . . in and ruined the door in [gaining entry to the bedroom]. I pray that the inference is *and it's not been rebutted,* nor has there been any explaining, that [Cantu] didn't go in [the bedroom] without the intent to commit a crime." RP at 73 (emphasis added). Following this statement, the trial judge found Cantu guilty of residential burglary but dismissed the theft, drug, and alcohol charges. A fair interpretation of this statement, along with the prosecutor's discussion of the statutory inference provided in RCW 9A.52.040, leads this court to conclude that the trial judge impermissibly employed a mandatory presumption of criminal intent, making it incumbent upon Cantu to prove, with sufficient evidence, that his intent was innocent.[4]

¶16 In *Deal,* we found the error to be harmless because, even though the instruction shifted the burden to the defendant, Deal's own testimony was sufficient to prove he had the requisite criminal intent. *Deal,* 128 Wn.2d at 697, 703. However, unlike *Deal,* in this case there is no indication that the imposition of a mandatory presumption was harmless. It is the intent to commit a crime, not the actual commission of a crime, which is an element of residential burglary. *State v. Bergeron,* 105 Wn.2d 1, 15-17, 711 P.2d 1000 (1985); *see also* RCW 9A.52.025(1). Therefore the court's acquittal on the theft charge may be irrelevant. But, given that the court employed a mandatory presumption of criminal intent, we cannot conclude that the error was harmless.[5]

---

[4] We recognize that this case is not factually "on all fours" with *Deal.* However, the underlying principle of *Deal* and its antecedents is that mandatory presumptions are not favored. *See Deal,* 128 Wn.2d at 702 (citing *State v. Johnson,* 100 Wn.2d 607, 617-20, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron,* 105 Wn.2d 1, 4, 711 P.2d 1000 (1985)). Since it appears that such mandatory presumption was in fact employed here, that principle applies.

[5] At the close of the bench trial, the trial judge stated to both counsel, in an apparent inquiry concerning the elements necessary to prove residential burglary, "Do you think I need to actually find that something was stolen from within the bedroom, or do you think that I need to, or do I have to find . . . that there had to be an intent to steal something from the bedroom?" RP at 69.

## IV

## SUMMARY AND CONCLUSION

¶17 The permissive inference provided in RCW 9A.52.040 permits the trier of fact to reject the inferred conclusion of criminal intent *regardless* of whether the defendant provides an innocent explanation of the unlawful entry or not. *Deal,* 128 Wn.2d at 702-03. That is appropriate. Due process requires the State to bear the " 'burden of persuasion beyond a reasonable doubt of every essential element of a crime.' " *Deal,* 128 Wn.2d at 698 (quoting *Hanna,* 123 Wn.2d at 710). A fair reading of the record leads us to conclude that the trial judge relieved the State of this burden by creating a mandatory presumption of criminal intent which Cantu was required to rebut. We therefore reverse the Court of Appeals, vacate the conviction without prejudice, and remand for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

MADSEN, J., concurs in result only.

¶18 J.M. JOHNSON, J. (dissenting) — Antonio B. Cantu entered his mother's home and went to her locked bedroom. He broke the dead bolt lock to the bedroom door by kicking in the door. Cantu took some possessions from within the bedroom and immediately fled the scene. He was convicted in a bench trial for residential burglary. Cantu was found guilty in part because the trial judge found unpersuasive Cantu's defense that he had broken the dead bolt lock by accidentally bumping against the lock while playing with dogs.

¶19 In drawing the permissible inference that the facts surrounding Cantu's unlawful entry into his mother's bedroom demonstrated intent to commit a crime, the trial court arrived at a reasonable, commonsense judgment. Unfortunately, the majority's decision today reverses the Court of Appeals and vacates Cantu's conviction. I dissent.

¶20 I concur in the majority's holding that "a child's license to enter the family home, or any room within, may be limited expressly or by clear implication." Majority at 825. Further, I agree with the majority's conclusion that his mother's locked bedroom door "gave Cantu clear implied notice that any permission to enter the home did not extend to her bedroom," thereby providing "sufficient evidence to find an unlawful entry." *Id.* However, I disagree with the majority's conclusion that the trial judge employed an "impermissible mandatory presumption" that shifted the burden of proof requiring Cantu to show lack of criminal intent. *See id.* at 825. I would hold that the trial judge permissibly found beyond a reasonable doubt that Cantu committed residential burglary since the trial judge made a permissible inference under the facts and circumstances of this case that Cantu intended to commit a crime.

STANDARD OF REVIEW

¶21 The standard of review for a sufficiency of the evidence claim is whether, after viewing evidence in the light most favorable to the State, any rational trier of fact could have found essential elements of crime beyond a reasonable doubt. *State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Smith*, 155 Wn.2d at 501; *Salinas*, 119 Wn.2d at 201. A reviewing court will reverse a conviction for insufficient evidence only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt. *Smith*, 155 Wn.2d at 501; *Salinas*, 119 Wn.2d at 201. "We may infer criminal intent from conduct, and circumstantial evidence as well as direct evidence carries equal weight." *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004) (citing *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)). We must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *State v.*

*Jackson*, 129 Wn. App. 95, 109, 117 P.3d 1182 (2005); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011, 833 P.2d 386 (1992). Put another way, credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *Jackson*, 129 Wn. App. at 109.

¶22 However, a defendant is innocent until proved guilty by the State. Thus, a burden of persuasion wrongly placed upon a defendant implicates constitutional rights of due process of law under the fourteenth amendment to the United States Constitution. *State v. Deal*, 128 Wn.2d 693, 698, 911 P.2d 996 (1996); *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135, *cert. denied*, 513 U.S. 919 (1994). To the extent we review this matter of law, our review is de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004); *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997).

ANALYSIS

¶23 Due process requires the State bear the burden of persuasion beyond a reasonable doubt for every essential element of a crime. *Deal*, 128 Wn.2d at 698; *Hanna*, 123 Wn.2d at 710. The State may use evidentiary devices, such as presumptions and inferences, to assist it in meeting its burden of proof. *Deal*, 128 Wn.2d at 699; *Hanna*, 123 Wn.2d at 710.

¶24 The majority wrongly attributes to *Hanna* and to a United States Supreme Court case a disfavor toward presumptions and inferences. In its opinion, the majority writes that "they are not favored in criminal law," majority at 826 (citing *Hanna*, 123 Wn.2d at 710; and *Sandstrom v. Montana*, 442 U.S. 510, 523-24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). But the pinpoint cite for *Hanna* simply states: "The State may, however, use evidentiary devices, such as inferences and presumptions, to assist in meeting its burden of proof." *Hanna,* 123 Wn.2d at 710. *Hanna* does *not* say that presumptions or inferences are disfavored in criminal

law. Nor does *Sandstrom*. Both cases stand for the proposition that *mandatory* inferences (or conclusive presumptions) are not favored in criminal law.[6]

¶25 The State adopts a permissive inference of intent to commit the crime of burglary in RCW 9A.52.040:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building *may* be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence *satisfactory to the trier of fact* to have been made without such criminal intent.

(Emphasis added.) We have approved the permissive inference of intent to commit a crime "whenever the evidence shows a person enters or remains unlawfully in a building." *State v. Grimes*, 92 Wn. App. 973, 980 n.2, 966 P.2d 394 (1998) (citing *State v. Brunson*, 128 Wn.2d 98, 107, 905 P.2d 346 (1995)); *Deal*, 128 Wn.2d at 699-700. *See also Varga*, 151 Wn.2d at 201-02. When permissive inferences are only part of the State's proof supporting an element and not the "sole and sufficient" proof of such element, due process is not offended if the prosecution shows that the inference more likely than not flows from the proven fact. *Deal*, 128 Wn.2d at 700 (citing *Brunson*, 128 Wn.2d at 107).

¶26 Here, the record sufficiently supports the trial judge's decision. The trial judge made a permissible inference from Cantu's unlawful entry into his mother's locked bedroom by breaking the door and lock that he intended to commit a crime and did not find Cantu's explanation for his entry into his mother's bedroom to be satisfactory.

¶27 The facts and circumstances in the record bolster the trial judge's drawing of the permissible inference that

---

[6] The majority strikes at fact finders' ability to reason. Inferences draw their power from their ability to better explain facts and phenomena than other explanations. Triers of fact routinely make inferences in finding or not finding elements of crimes proved beyond a reasonable doubt. This is especially so with criminal intent, which is a state of mind. As discussed below, we allow permissive inferences of intent to burglarize to be drawn. In such cases, intent constitutes an inference to the best explanation in light of the particular facts and our commonsense experience with unlawful entry and burglary.

Cantu acted with the intent to commit a crime. The trial judge concluded that Cantu did not have permission to be in his mother's bedroom and that Cantu broke into the bedroom by kicking in the door and ruining it. Report of Proceedings (RP) (July 9, 2003) at 73. The trial judge also noted Cantu's defense that he did not enter the bedroom with intent to commit a crime, claiming that the door was accidentally broken in the course of playing with dogs and that only his possessions were removed.

¶28 The trial judge held that he did not believe this defense to be credible. The dogs were not seen by a witness. Items were missing from the bedroom which belonged to Cantu's mother, and Cantu was the only suspect. Cantu also fled the home immediately after he broke into the bedroom. Later, Cantu returned to his mother money that she was missing from the bedroom.

¶29 Statements in the record cited by the majority do not demonstrate the trial judge employed any mandatory inference (or shifted the burden to require defendant to disprove an element of the crime). Admitting "the record is not conclusive," majority at 827, the majority asserts that "it appears to us that the court applied a mandatory presumption to find Cantu's intent was criminal." *Id.* The majority cites two statements made by the prosecutor and one statement made by the judge near the close of the trial in support of its contention that "the trial court improperly placed the burden on Cantu to prove his innocence." Majority at 827.

¶30 Discussing RCW 9A.52.040's statutorily permissive inference, the prosecutor stated that "a person [who] enters or remains unlawfully in a building, and [in this case], in the bedroom, *may* be inferred to have acted with [criminal] intent. And then the burden actually shifts [to Cantu] to show evidence satisfactory that the entry was made without such criminal intent." RP at 69 (emphasis added). This statement is itself ambiguous as to whether an inference of criminal intent is permissible or mandatory. The prosecutor stated that such intent "may" be inferred. The prosecutor's

subsequent sentence can be read as describing what happens when the permissible inference is actually engaged. *See* RP at 69.

¶31 However, the record shows the prosecutor more clearly relating the law moments later. Stating she "misspoke," the prosecutor said "the inference is permissible, not mandatory." She reiterated that "its permissible inference that the court can find that the illegal entry should have some explanation to it." RP at 71.

¶32 Furthermore, to read the trial judge's statement cited by the majority as demonstration that the inference applied was mandatory is a jump to conclusion. More likely, the trial judge simply exercised his discretion and found such an inference. *See* RP at 73. Cantu entered not just into a house where he was no longer a resident, but kicked through a locked door, and entered the room without permission.

¶33 The standard of review requires we defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *Jackson*, 129 Wn. App. at 109; *Walton*, 64 Wn. App. at 415-16. If the trial judge had applied a *mandatory* inference in deciding the case below, his decision would be reversible as a violation of due process. But the trial judge's ruling shows that he understood that the inference was related to the element of intent. In fact the trial judge dismissed charges against Cantu that required proof of commission but found against Cantu on the charge that required only proof of intent. *See* RP at 72.

¶34 Judges are presumed to know and apply the law, just as there is a presumption that a trial judge knows the rules of evidence. *See, e.g., In re Welfare of Harbert*, 85 Wn.2d 719, 729, 538 P.2d 1212 (1975); *In re Marriage of Foran*, 67 Wn. App. 242, 259, 834 P.2d 1081 (1992). There is a presumption that a trial judge properly discharges official duties without bias or prejudice. *See, e.g., In re Pers. Restraint of Davis*, 152 Wn.2d 647, 101 P.3d 1 (2004); *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967).

Absent a strong showing that the trial judge misunderstood and misapplied the law or that substantial evidence shows that the inference of intent cannot be supported, his ruling on the element of criminal intent should be respected.

CONCLUSION

¶35 Here, there is no record showing that the judge misunderstood or improperly applied the law. The decision of the trial judge rested upon a permissible inference of intent, is supported by substantial evidence, and should therefore be affirmed.

¶36 Therefore, I dissent.

After modification, further reconsideration denied May 30, 2006.