IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79782-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RAYMOND LINUS SAGE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Raymond L. Sage was charged with one count of failure to register as a sex offender and a bench warrant issued when he failed to appear for arraignment. Months later, when officers contacted him and advised that he was under arrest pursuant to the warrant, Sage attempted to flee. As he was apprehended, Sage made several statements that he was not going to register and did not believe in the registration process. After a CrR 3.5 hearing, the court determined that the statements were admissible because the officers' announcement of the basis for Sage's arrest was required by statute and did not constitute custodial interrogation. Sage challenges the admissibility determination on his statements made at the time of arrest and the sufficiency of the evidence as to his conviction for failure to register as a sex offender. We affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Raymond Sage was convicted of two counts of first degree child molestation in August 1992. As a result of the conviction, Sage is subject to a lifetime requirement to register as a sex offender. In November 10, 2016, Sage changed his registration status from transient to having a fixed address. His new registration address was at an apartment complex in Everett. The units are rented on a monthly basis and multiple registered sex offenders are tenants there.

On February 15, 2018, Snohomish County Sheriff Detective Scott Berg went to the Everett apartments to verify the address of several other sex offenders registered as residing there. Sage was deemed a lower risk level than those on Berg's list for verification that day and consequently was on a different schedule for address confirmation. However, Berg decided since he was already going to conduct address checks at the location, he would also check on Sage.

Berg spoke to the part-time manager of the apartment, Rodney Nomura, and went over the list of individuals whose residences he intended to verify. Nomura informed Berg that Sage no longer lived at the apartment complex. Berg knocked on the door of the apartment associated with Sage's last registration and someone else answered. Berg then called the phone number Nomura provided for Sage, but the number was no longer in service. Berg later checked national and statewide sex offender databases, the local jail roster, and a nearby hospital, but had no success in finding any information regarding Sage's whereabouts.

On August 17, 2018, the State charged Sage with one count of failure to register as a sex offender, alleged to have occurred between December 1, 2017

and February 22, 2018. Arraignment was set for September 5, 2018, but a bench warrant issued based on Sage's failure to appear for that hearing. Later that month, Everett Police Detective Michael Atwood asked Snohomish County Sheriff Deputy Lucas Robinson to assist him in attempting to find Sage as information had been received that he might be located near a particular street in Everett. Atwood observed a vehicle that matched the description of one associated with Sage. Atwood conveyed this information to Robinson who approached the vehicle and found Sage in the driver's seat. Robinson advised Sage that he had a warrant for his arrest and commanded him to step out of the vehicle.

Sage exited the vehicle and then made a statement along the lines of "I'm out of here." Sage then ran, but was stopped by the officers almost immediately. Sage began yelling loudly that he was being kidnapped as the officer's attempted to detain him. The officers informed him he was not being kidnapped and that he was being placed under arrest pursuant to a warrant for failure to register as a sex offender. Sage stated that the officers didn't have a reason to arrest him, that he wasn't going to register as a sex offender, and that he didn't believe in that process. Sage was eventually taken into custody and booked on the outstanding warrant.

A CrR 3.5 hearing was held to determine the admissibility of Sage's statements at the time of his arrest. The court accepted the State's stipulation as to Sage's custodial status and concluded that he was in custody for purposes of Miranda.[1] It further found that Miranda warnings had not been given to Sage at the time the challenged statements were made. The judge found that officers

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

advised Sage he was under arrest pursuant to RCW 10.31.030. Further, the court reasoned that since the officers were complying with a statutory duty, the statements by officers that Sage was under arrest based on an outstanding warrant for failure to register were not designed or likely to elicit an incriminating response. The court then found Sage's statements to be spontaneous, voluntary, and not pursuant to custodial interrogation. As such, the statements were deemed admissible at trial.

Sage's case moved toward trial and the State filed an amended information, adding one count of felony bail jumping based on the failure to appear for arraignment.[2] Sage's statements to officers at the time of arrest were admitted at trial, pursuant to the court's earlier CrR 3.5 admissibility determination. The jury convicted Sage on both counts. Sage timely appealed.

ANALYSIS

I.    Admissibility of Statements Made at the Time of Arrest

Sage challenges the trial court's admission of statements he made at the time of his arrest, specifically, those made after officers informed Sage that there was a warrant for his arrest. Sage then "told the officers that they did not have a reason to arrest him, and that he did not believe in sex offender registration, and that he would not comply."

The federal and state constitutions guarantee the privilege against self-incrimination. U.S. CONST. amend V; WASH CONST. art I § 9. To ensure this constitutional right, police officers must advise an individual in custody of his right

_____

[2] Sage does not raise any issues on appeal as to the bail jumping conviction.

to remain silent and have an attorney present during interrogation. Miranda, 384 U.S. at 445; State v. Radcliffe, 164 Wn.2d 900, 905, 194 P.3d 250 (2008). "Miranda warnings were designed to protect a defendant's right not to make incriminating statements while in police custody." State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). Statements obtained during a custodial interrogation are inadmissible, absent a valid waiver. Miranda, 384 U.S. at 475. "Miranda warnings are required when an interrogation or interview is (a) custodial (b) interrogation (c) by a state agent." Lorenz, 152 Wn.2d at 36. Here, the State stipulated that Sage was in custody at the time his statements were made and neither party disputes that Miranda warnings had not yet been provided to him.

"Miranda does not apply to voluntary, spontaneous statements made outside the context of custodial interrogation." State v. Sadler, 147 Wn. App. 97, 131, 193 P.3d 1108 (2008) (abrogated on other grounds by State v. Sublett, 176 Wn.2d 58, 292 P.3d 715 (2012)). "The general rule is that a statement is voluntary if it is made spontaneously, is not solicited, and not the product of custodial interrogation." State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985).

The trial court found Sage's statements that the officers had no reason to arrest him, "that he did not believe in sex offender registration, and that he would not comply" were spontaneous and voluntary. We agree. Prior to Sage's statements, the police officers told him to step out of his vehicle and informed him that he was under arrest on authority of a warrant. Sage argues that Robinson's explanation of the basis for arrest "impliedly called for a response from Mr. Sage." He claims that Robinson's announcement that Sage had an active warrant is

analogous to the officer's statement in the case of In re Personal Restraint of Cross where the officer told the defendant "sometimes we do things we normally wouldn't do and feel bad about it later." 180 Wn.2d 664, 684, 327 P.3d 660 (2014) (abrogated on other grounds State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). The court found this statement by the officer was reasonably likely to elicit an incriminating response. Id. We are unpersuaded by this argument. Cross involved a defendant who had unequivocally invoked his right to remain silent. Our supreme court determined that the officer's statement was likely to elicit an incriminating response as it implied Cross had committed murders which had already caused an emotional response from him. The crux of the court's analysis was that the officer had not honored Cross' invocation of his right to remain silent. Id. at 685-87.

The advisement by Robinson in the case before us did not call for a response and does not constitute interrogation. Further, we have upheld admission of statements that were made in a context of much more engaging comments by law enforcement. See Sadler, 147 Wn. App. at 131 (affirming admission of statements made after officer informed defendant he would be applying for a warrant); State v. Breedlove, 79 Wn. App. 101, 112, 900 P.2d 586 (1995) (admission of defendant's statements in response to officer telling him "he was in Tacoma where he had killed somebody" was proper); State v. Webb, 64 Wn. App. 480, 486, 824 P.2d 1257 (1992) (where defendant asked if booking procedures were necessary, court held officer's response "You're damn right this

is necessary. You went in and vandalized Sheryl's apartment" was not likely to elicit incriminating response).

The officers in this case complied with RCW 10.31.030 by informing Sage that he had an active warrant and was under arrest. The statute directs that "[t]he officer making an arrest must inform the defendant that he or she acts under authority of a warrant" and then sets out other procedural requirements for the service of such warrant. RCW. 10.31.030. After this announcement from Robinson, Sage refused to go into custody and struggled with officers. It was during this time that Sage made the statements at issue and shouted out that officers were kidnapping him. Sage's statements were spontaneous and unsolicited, therefore they were voluntary. We affirm the trial court's admission of Sage's statements at the time of arrest under CrR 3.5.

II.     Sufficiency of Evidence at Trial

Sage next argues that the State failed to prove all of the statutory elements of failure to register as a sex offender beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend XIV; WASH. CONT. art I, § 3. The question before us is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "When the sufficiency of the evidence

is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id.

Here, the State had the burden to prove the following elements beyond a reasonable doubt:

(1) Prior to December 1, 2017, the defendant was convicted of a felony sex offense; and

(2) That due to that conviction, the defendant was required to register in the State of Washington, Snohomish County, as a sex offender between December 1, 2017 and February 22, 2018; and

(3) That during that time period, the defendant knowingly failed to comply with a requirement of sex offender registration.

The jury was also instructed that the conditions of sex offender registration included, "[t]he requirement that the defendant provide signed written notice of his change of address to the county sheriff within three business days of moving from the registered address."

Sage focuses his argument on the State's failure to prove that he had moved from his registered residence and was not still residing at that location during the period of time set out in the charging document. This challenge is not well taken. The State's primary evidence to prove Sage no longer lived at the registered address came from Nomura, the part-time manager of the apartment complex. He testified that the defendant had moved out of the location and stopped paying rent in December 2017. Nomura's testimony also detailed his experience managing the building and set out his familiarity with Sage. Though Sage attempts to attack Nomura's credibility, we do not engage in such a review

on sufficiency challenges and instead defer to the trier of fact. See State v. Cantu, 156 Wn.2d 819, 831, 132 P.3d 725 (2006). Further, the mere fact that Nomura did not remember details about Sage's departure from the complex, how his personal property was handled, or his return of the unit keys does not overcome the other testimony he provided as to when Sage stopped paying rent and vacated the apartment, and his confirmation that another tenant now lived in the residence.

Sage relies on State v. Drake to argue the State was required to prove that Sage did not intend to return. 149 Wn. App. 88, 201 P.3d 1093 (2009). However, Drake was about an individual who had been charged with failure to register and no longer had a legal right to occupy his apartment due to eviction, but where knowledge of his removal and exclusion from the residence was unclear. Id. at 94. Drake had been paying rent on a monthly basis. The landlord removed all of Drake's belongings and placed them in storage the day after rent was due when Drake failed to pay. Id. at 91. Less than ten days later, police learned of his ouster while conducting a routine check of the sex offender registry. Id. Drake brought a sufficiency of the evidence challenge after he was convicted of failure to register following a bench trial. Id. at 91, 93. Division Three of this court focused their analysis on the fact that no lease had been presented to indicate the removal procedures agreed to by the parties and the lack of evidence at trial demonstrating that Drake was on notice of his eviction or removal. Id. at 94. The court noted that no evidence concerning Drake's whereabouts or activities during the period at issue had been presented either. Id. Division Three further found that the State

had failed to prove that Drake did not intend to return to his residence at the apartment. Id. at 94-95.

Sage's case is distinguishable in that there was no testimony that he was evicted or removed from the address where he had registered. This indicates there was no issue about whether Sage knew he no longer lived at the residence. Unlike Drake, there was no evidence that Sage left his belongings at his former residence. Importantly as well, the time period is quite distinct. In Drake, officers learned Drake was not at the residence less than ten days after the landlord had removed his possessions from the apartment for not paying rent, and he was arrested on a warrant within a week of the officer's discovery of this information. Id. at 91. Here, Nomura testified that Sage stopped paying rent after December 2017 and Berg attempted to verify the residence February 15, 2018. Berg knocked on the door of the apartment Sage had registered with the sheriff's department and another individual was living there. The fact that Sage was later arrested in the general vicinity of the apartment complex does not overcome the evidence showing that he ceased to reside there sometime after December 2017. As such, this situation is not analogous to the facts in Drake.

We find that sufficient evidence was provided at trial to establish that Sage was guilty of failure to register and affirm the conviction.

Affirmed.

WE CONCUR:

- 10 -