# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57054-8-II |
| Respondent, | |
| v. | |
| FLOYD ARTHUR SIBLEY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Floyd A. Sibley appeals his conviction for residential burglary.  Sibley argues the State failed to present sufficient evidence that he entered or remained unlawfully with the intent to commit a crime.  Because there is sufficient evidence to prove that Sibley entered or remained unlawfully in another's home with the intent to commit a crime therein, we affirm Sibley's conviction.

## FACTS

Kevin Klason inherited his mother's property after she passed away in June 2021.  The property included a house, a detached wood shop[1] at the far end of the driveway, and a pump house.  The wood shop, originally built as a one-car garage, had double doors and housed various workbenches, shelving, a woodburning stove, lumber, and tools.  Klason visited the property every

---

[1]  Klason referred to the structure as a "wood shop," "wood working shop," or "shop."  Verbatim Rep. of Proc. (VRP) (Apr. 19, 2022) at 33, 34, 43.  The structure is also referred to in the record as a garage.  This prehearing refers to the structure as a wood shop.

few weeks to prepare it for sale. He visited the property in mid-October 2021, but did not go again for several weeks.

On November 30, 2021, Klason returned to the property and found the gate to the driveway locked with an unfamiliar padlock. He also noticed that the windows were covered, even though he had left the curtains open when he was previously there in October. When Klason entered the home, he discovered the windows were covered from the inside with garbage bags.

In the home, Klason found a man sleeping on a recliner in the bedroom. Klason had never seen the man before and had not given anyone permission to enter the home. He shouted at the man and asked, "'Who are you?'" Verbatim Rep. of Proc. (VRP) (Apr. 19, 2022) at 38. The man, who was Sibley, woke up and asked who Klason was. Klason stated that he owned the house and said, "'Let's go outside.'" VRP (Apr. 19, 2022) at 39. Sibley complied.

Once outside the home, Klason called 911. Pierce County Sheriff Deputy Nathan Betts arrived about 10 minutes later, followed shortly after by another deputy.

When Deputy Betts arrived, he saw Sibley and Klason waiting for him outside the home. Deputy Betts asked Sibley what he was doing on the property. Sibley responded that he was dropped off by a friend. Sibley stated he did not know why he was dropped off or who dropped him off. Deputy Betts again asked Sibley how he got to Klason's home, and Sibley responded that his car was parked in the "garage" at the end of the driveway. VRP (Apr. 19, 2022) at 62. Deputy Betts placed Sibley under arrest.

After Sibley's arrest, Deputy Betts and Klason went to the wood shop to find Sibley's vehicle. The wood shop's double doors were shut, and Sibley's vehicle was parked inside. Klason found his father's woodburning stove and shop vacuum inside Sibley's vehicle. Klason also

2

noticed several items missing from the wood shop, including at least 20 woodworking clamps, a large assortment of drill bits, a lathe, at least 10 lathe tools, a table saw, a joiner, a planer, handheld tools, and a wheelbarrow. According to Klason, all of these items were on the property the last time he was at the house.

Klason and Deputy Betts then assessed the rest of the property. Klason noticed that the yard was as he left it when he last visited the property in October.

Klason discovered the pump house's padlock was broken off and the hasp was damaged. A space heater was missing from the pump house.

Klason also found items missing from the house, including at least 10 antique irons. And Klason found "a pan in the oven that looked like someone had cooked some fish or something on it," which was not there previously "because there was no food left in the refrigerator" from Klason's last visit. VRP (Apr. 19, 2022) at 47. Klason also discovered towels hanging in the bathroom that did not belong to him.

The State charged Sibley with one count of residential burglary under RCW 9A.52.025. At trial, Klason testified as described above.

Sibley testified at trial that a woman whom he did not know approached him while he had been working on the septic system of another individual who lived a couple miles away from Klason's property. This woman, Michelle Little, asked him to help her with some yard cleaning and garbage hauling in exchange for a woodburning stove. Sibley agreed to help her. Sibley went to his own home that night and then met Little the next day on November 29 at the address she gave him, which happened to be the Klason property.

3

Sibley assumed the property belonged to Little. She did not have a car on the property when he was there with her. Sibley testified he spent all day cleaning Klason's yard of tree limbs and scrap metal. Afterwards, in exchange for his work, he loaded the woodburning stove into his car. At Little's request, Sibley also put the shop vacuum in his car, and she placed one of the antique irons in the car.

Little then invited him to stay for dinner. While conversing with Little, Sibley offered to close and lock the driveway gate for her after she mentioned she was worried about a "guy coming over." VRP (Apr. 19, 2022) at 82. Sibley took a lock from her that she happened to have and closed and locked the driveway gate.

After dinner and some beers, Sibley fell asleep on the recliner. Sibley did not wake up until Klason woke him the next day. Sibley stated that when he woke up, he could not remember where he was, why he was there, or how he got there. Sibley did not remember Little leaving the property. Sibley never saw Little again.

Sibley did not tell law enforcement officers who contacted him at the property anything about Little, the arrangement he had with Little, how the items got into his car, or the events involving Little the night before Klason found him on the property. Instead, Sibley admitted at trial that he initially told the deputy that he was dropped off at the property by a friend and he did not know why he was at the property. Sibley also stated he did not notice there were garbage bags covering the windows of the house.

The jury found Sibley guilty of residential burglary. The trial court sentenced Sibley to six months' confinement.

Sibley appeals.

4

ANALYSIS

Sibley argues that the State failed to present sufficient evidence to convict him of residential burglary. We disagree.

A. LEGAL PRINCIPLES

1. Standard of Review

In insufficiency of evidence claims, we consider whether the "[e]vidence is sufficient to support a guilty verdict" such that any rational trier of fact "could find the elements of the charged crime beyond a reasonable doubt." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). The defendant "admits the truth of all of the State's evidence," and the evidence and all reasonable inferences from the evidence are viewed in a light most favorable to the State. *Id.* at 265-66. Circumstantial and direct evidence are considered equally reliable. *Id.* at 266. We do not review the factfinder's credibility determinations. *Id.* A conviction will be reversed only when a rational trier of fact could not "find that all elements of the crime were proved beyond a reasonable doubt." *State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

2. Residential Burglary

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). The State has the burden to prove each element of the crime beyond a reasonable doubt. *State v. Cantu*, 156 Wn.2d 819, 825, 132 P.3d 725 (2006).

"A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). The focus is on the unlawfulness of the defendant's presence on a property. *State v. Smith*, 17 Wn. App. 2d

146, 156, 484 P.3d 550, *review denied*, 198 Wn.2d 1005 (2021). Permission to enter or remain may only be given by someone who owns or lawfully resides on the property. *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998). A person is not required to know that his or her entering or remaining is unlawful. *State v. Moreno*, 198 Wn.2d 737, 749, 499 P.3d 198 (2021).

Intent to commit a crime against a person or property is interpreted broadly—the State need only show that a person intended to commit any crime. *State v. Sony*, 184 Wn. App. 496, 500, 337 P.3d 397 (2014), *review denied*, 182 Wn.2d 1019 (2015). Intent can be inferred through circumstantial evidence, and courts will consider the defendant's conduct and the surrounding facts. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013).

B.     SUFFICIENT EVIDENCE SUPPORTS RESIDENTIAL BURGLARY

1.     Enter or Remain Unlawfully

Sibley argues that the State did not present sufficient evidence that Sibley entered or remained unlawfully at Klason's home. We disagree.

Here, Sibley concedes that he did not have Klason's permission to enter the home, but he argues that he reasonably believed he was given permission to enter the home by Little. Sibley asserts that his genuine belief that he had permission from Little negates his unlawful entry.

Sibley's belief that he had permission to enter the home from Little is irrelevant. *See Moreno*, 198 Wn.2d at 749. Sibley's concession that Klason, who is the owner of the property, did not give him permission to enter the home, along with Klason's testimony that he did not give Sibley permission to be in the house, is sufficient to satisfy the "entering or remaining unlawfully" element of residential burglary. RCW 9A.52.010(2), .025(1); *Smith*, 17 Wn. App. 2d at 156-57.

2.        Intent to Commit a Crime

Sibley argues that the State did not present sufficient evidence of Sibley's intent to commit a crime against Klason or his property because the evidence was "equivocal and insufficient." Br. of Appellant at 15. Sibley asserts that he reasonably believed he lawfully obtained items on the property and that such belief negates criminal intent. The State argues that the surrounding facts and circumstances show that Sibley intended to commit a crime. We agree with the State.

Sibley contends that the evidence was equivocal and insufficient to show he intended to commit a crime, but relies only on his own testimony at trial. Sibley's contention is premised on an argument that his testimony was more credible than Klason's, which the jury apparently found to be more credible than Sibley's. We do not review the factfinder's credibility determinations. *Cardenas-Flores*, 189 Wn.2d at 266.

Here, viewing the evidence and all reasonable inferences in the light most favorable to the State, the record shows that Sibley stayed in Klason's home without permission, as evidenced by the fact that Klason did not give Sibley permission to be on the property, Sibley was sleeping in the home, there were towels in the bathroom that did not belong to Klason, and there were dinner remains and a dirty pan left in the kitchen. The record also shows that Sibley attempted to conceal his presence on the property, as evidenced by Sibley locking the gate to the property, using garbage bags to cover the home's windows, and parking his car inside the wood shop. Moreover, Klason found items inside Sibley's car that Klason did not give him permission to take, including a woodburning stove and shop vacuum. Sibley admitted that he loaded the stove and shop vacuum into his car and that he intended to take the stove. When Klason surveyed the property with Deputy Betts, Klason pointed out other items that were missing or broken since his previous visit to the

property. Based on these facts and reasonable inferences, viewed in a light most favorable to the State, a reasonable trier of fact could find beyond a reasonable doubt that Sibley intended to commit a crime.

Moreover, when Sibley spoke with Klason and Deputy Betts regarding his presence on the property, he stated that he could not remember why he was at the property or how he got there. Only later did he state that he was on Klason's property to clean up the yard, which was contradicted by Klason's testimony that the yard looked the same from the last time Klason was at the property. And even after Sibley remembered that his car was parked in the wood shop, he did not mention anything about Little.

When the evidence and all reasonable inferences are viewed in a light most favorable to the State, a reasonable jury could find beyond a reasonable doubt that Sibley intended to commit a crime. Therefore, we hold sufficient evidence supports that Sibley intended to commit a crime.

There is sufficient evidence in the record to prove that Sibley entered or remained unlawfully in another's home with the intent to commit a crime therein. Accordingly, we affirm.

No. 57054-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Price, J.