IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>      Respondent,<br><br>    v.<br><br>MATTHEW WILLIAM PECK,<br><br>      Appellant. | No. 87681-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — After a bench trial, the court convicted Matthew Peck of two counts of residential burglary. The court found that Matthew unlawfully entered a residence that belonged to his father, Gene Peck, on November 21 and then again on November 22.[1] Matthew appeals only his conviction on the first count, arguing, in pertinent part, that the State provided insufficient evidence he possessed the intent to commit a crime against a person or property within the residence. Matthew also challenges the court's finding that a chemical dependency contributed to his offense, and requests we remand this matter for the trial court to strike the DNA collection fee and victim penalty assessment (VPA).

We affirm Matthew's conviction and the court's chemical dependency finding. We remand this matter only to strike the DNA collection fee and VPA.

---

[1] For clarity, we respectfully refer to Matthew and Gene Peck by their first names.

## I.    BACKGROUND

On November 21, 2022, police officers encountered Matthew outside a detached garage on Gene's property.  Matthew told the officers that he was at the property collecting items to sell at a garage sale.  Matthew also testified at trial that he went "inside the residence" and "prepared items" for sale, including several that belonged to his father. Matthew had previously been trespassed from Gene's property by police on November 17. The officers arrested Matthew on a charge of residential burglary.

Matthew returned to Gene's property the next day, and police encountered him inside the residence.  The officers also found a second person.  Matthew told the officers this second person agreed to drive him to the residence after he "promise[d] to give her some things from the residence in exchange for her help." The officers arrested Matthew, again charging him with residential burglary.

## II.    ANALYSIS

### A. Sufficiency of the Evidence

Matthew primarily argues the State provided insufficient evidence to support his conviction on count one, specifically, that he possessed the requisite intent to commit a crime against a person or property within the residential portion of Gene's property.  That is, Matthew argues the evidence only supports a finding that he entered the residence on November 21 for non-criminal purposes.  Matthew claims there is no evidence he entered the residence to do anything more than start a fire and gather his belongings.[2]  The court found Matthew entered the residence on

---

[2] At trial, an officer testified that she observed smoke in the chimney of the

November 21 to "sell items that did not belong to him." We hold that there is substantial evidence supporting the trial court's finding.

Under RCW 9A.52.025, "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." The State must prove all elements of a crime beyond a reasonable doubt. State v. Cantu, 156 Wn.2d 819, 825, 132 P.3d 725 (2006). We review challenges to the sufficiency of the evidence de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We view the evidence in the light most favorable to the State and "determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). Sufficiency claims "admit[] the truth of the State's evidence and all reasonable inferences that can be drawn from it." Id. at 106. This court "defer[s] to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." Id.

At trial, Officer Brittany Stigall testified that when she encountered Matthew outside the garage on November 21, he told her he had been inside the residence earlier that day. Officer Stigall also testified that Matthew told her he had gathered some of his father's property. While being cross-examined, Matthew admitted he

residence on November 21. In his brief, Matthew concedes that he started the fire. The State asserts that even the act of starting the fire, through theft of services, could constitute a crime sufficient to satisfy the "intent to commit a crime against person or place" element of RCW 9A.52.025. We do not reach that question, as there is sufficient evidence in the record to support the court's finding Matthew had the specific intent to commit the crime of theft of Gene's property.

3

had entered the residence to gather some of his father's belongings, specifically for sale. Viewing all evidence in the light most favorable to the State, it is a reasonable inference that he entered and took items without his father's consent of the sale of his property. Moreover, RCW 9A.52.025 only requires proof of *intent* to commit a crime, not its actual commission. Thus, we conclude there is substantial evidence to support the court's finding that he entered the residence to commit a crime therein.

In asserting the State lacked sufficient evidence he intended to commit a crime, Matthew makes several somewhat overlapping arguments, each of which is unavailing.

First, Matthew appears to argue the State did not provide any evidence of his intent to commit a crime while inside the residence because Officer Stigall only testified that she saw Matthew *outside* the detached garage. Matthew offers no authority that the evidence must show someone, let alone a law enforcement officer, saw him within the residence, i.e., caught him in the act. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). And, again, Officer Stigall testified that Matthew admitted to entering the residence, and on his own cross-examination, Matthew admitted he entered the residence and planned to sell his father's belongings. Looking at all the evidence in the light most favorable to the State, Officer Stigall's testimony and Matthew's own admissions provide sufficient evidence that at one point in the recent past he

4

entered the home with at least the intent to commit theft. Homan, 181 Wn.2d at 105.

Second, Matthew next claims there is insufficient evidence he intended to commit a crime against *a person or property within the residence* on Gene's property. In support, he cites to State v. Devitt, 152 Wn. App. 907, 912-13, 218 P.3d 647 (2009), where this court held that fleeing from police outside of a residence and then entering that residence to evade arrest was not a crime against a person or property within that residence. Matthew's reliance on Devitt is misplaced. There, the defendant's flight from police occurred entirely outside of the residence and, yet, the defendant was charged with burglary, although there was no police officer present inside the home, i.e., there was no victim on the property. Id. at 913. By contrast, here, there was evidence before the court that Matthew intended to commit a crime *against his father* or his father's property inside the residence he is charged with burgling. Again, Matthew testified he entered the residence with a plan to sell items from within the residence that he knew belonged to his father.

Third, Matthew cites to State v. Jackson, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989), for the proposition that a court may not infer specific intent for the purposes of burglary where there is a reasonable explanation under which the defendant is not guilty of the charge. There, the court held "intent may not be inferred from conduct that is patently equivocal . . . There must be evidence of entering or remaining unlawfully in a building" to infer specific intent for a burglary charge. Id. In Jackson, the defendant's conduct lent itself to two reasonable

inferences, each corresponding to different crimes. Id. Jackson is distinguishable from this case.

Here, Matthew's conduct neither (a) lends itself to a reasonable inference he is guilty of a different crime, nor (b) is it "patently equivocal" that he committed burglary because all evidence points only to the fact that he entered or remained inside the residence for one purpose: to take and sell his father's belongings. Id.

As to the latter, Matthew has not offered any innocent explanation for his conduct beyond the claim he was merely gathering his own belongings, which is not supported by the record. Matthew has not, for instance, claimed that the "garage sale" had an innocent purpose or was with Gene's consent. On the contrary, an officer testified he had verbally informed Matthew on November 17 that Gene had revoked Matthew's permission to be on the property.[3]

Taken together, there was sufficient evidence before the trial court from which a rational finder of fact could have found beyond a reasonable doubt that Matthew entered the residence with the intent to commit theft against Gene. Homan, 181 Wn.2d at 105. [4]

---

[3] Matthew also claims there is not sufficient evidence the detached garage at the property is a dwelling. However, the trial court does not appear to have relied on any such finding, nor does our analysis. Instead, the court found that Matthew entered the residence on the property on November 21, and found that residence to be a dwelling. Specifically, the court found that Matthew "entered the home not once, but twice," and stated, "[t]he evidence is that he entered the home the first time," on November 21, "to sell items that did not belong to him." The court further found "there was ample testimony that *the residence involved* was a dwelling" under RCW 9A.04.110(7). (Emphasis added.) As the court did not rely on any finding that the detached garage was a dwelling, we do not reach this issue.

[4] The State raises an additional issue in its brief regarding whether, if we do not find sufficient evidence supports Matthew's conviction on count one, we must reverse Matthew's conviction and find he committed the lesser offense of burglary

B. Substantial Evidence Supporting Chemical Dependency Finding

Matthew also claims there is no evidence to support the court's finding that a chemical dependency[5] contributed to his offense. Specifically, Matthew claims the State did not provide any evidence that he was "under the influence of any intoxicating substance."

RCW 9.94A.607(1) grants the court the authority to order a defendant to participate in rehabilitative programming or to perform other affirmative conduct where the court finds that a chemical dependency contributed to the defendant's offense. RCW 9.94A.607(1) does not require a court to have direct evidence a defendant was actually using a chemical substance at the time of their offense, but rather it grants the court authority to impose programming where it finds a dependency simply "contributed" to the offense. At sentencing, the court found Matthew had a chemical dependency which contributed to his offense.

The question then is whether this finding is supported by substantial evidence.[6] State v. Dobbs, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). "Substantial

---

in the second degree. Because we do find sufficient evidence supports Matthew's conviction, we do not reach this issue. Wash. Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.") (internal quotation marks omitted) (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)).

[5] The parties do not challenge, and we could not find in the record, the actual conditions the court imposed on the defendant, including any required chemical dependency evaluation.

[6] The State cites State v. Horn, 3 Wn. App. 2d 302, 415 P.3d 1225 (2018), and argues the court "did not abuse its discretion in ordering a chemical dependency evaluation." However, the issue before this court is whether there was substantial evidence to support the court's finding that a chemical dependency contributed to Matthew's offense, not whether the court had the authority to impose the chemical

evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

We hold there is substantial evidence to support the trial court's chemical dependency finding. Specifically, Matthew testified that police located fentanyl on his person on November 21 when they searched him after his arrest. Further, an officer testified that on November 17, Matthew had something on his person he "wouldn't want [the officer] to see," which serves as additional support for the court's finding.[7] Together, this evidence provides "a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." Id.

In response, Matthew appears to argue there is no evidence in the record to show he actually used the substances or had substance abuse issues. In support of this claim, he relies on State v. Jones for the proposition that a trial court properly imposes a chemical dependency evaluation where there is evidence in the record a defendant has a substance abuse condition. 118 Wn. App. 199, 208–09, 76 P.3d 258 (2003). Jones is distinguishable. There, this court held the trial court erred in requiring the defendant to undergo mental health treatment because

_____

dependency evaluation after making that finding. Further, Horn addresses the standard of review for a distinct legal question, namely, as to a court's decisions regarding the admissibility of evidence. 3 Wn. App. 2d at 310 (citing State v. Strizheus, 163 Wn. App. 820, 829, 262 P.3d 100 (2011)).

[7] Responding to Matthew's argument there was no evidence a chemical dependency contributed to his offense, the State appears to contend that Matthew admitted to possessing fentanyl on November 17. But that assertion is not supported by the testimony they cite, as in that testimony Matthew refers to November 21, not November 17.

the court did not make a finding that the defendant's mental health condition contributed to his offense. Id. at 209. Nothing like that occurred here.[8]

C. The DNA Collection Fee and VPA

The court's judgment and sentence imposed both a VPA[9] and DNA collection fee.[10] Matthew now requests a remand to strike both legal and financial obligations. The State concedes the matter should be remanded for that purpose. We accept this concession and remand this case to the trial court to strike the DNA collection fee and VPA in accordance with RCW 7.68.035(4) and RCW 43.43.7541(2).

III. CONCLUSION

We affirm Matthew's conviction, and the court's order imposing a chemical

---

[8] In support for his claim this court must strike the trial court's chemical dependency condition, Matthew also cites to State v. Vasquez, where this court held that the "Moral Reconation Therapy" the court ordered the defendant to complete was not sufficiently related to the defendant's offense. 95 Wn. App. 12, 16-17, 972 P.2d 109 (1998). Matthew's reliance on Vasquez is misplaced. In Vasquez, the trial court drew its authority from a different statute than did the trial court here. See Id. at 15-16. Whereas there, the statute at issue required the ordered therapy to be *crime-related*, here, RCW 9.94A.607(1) requires the court find that a chemical dependency *contributed to the defendant's offense*.

[9] Formerly, RCW 7.68.035(1)(a) mandated a $500 victim penalty assessment for all adults found guilty in superior court of a crime. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016). In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are required to waive VPAs imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 7.68.035(5)(b).

[10] Alongside amendments to victim penalty assessments, the legislature also amended statutes governing DNA collection fees, eliminating the fee for all defendants. LAWS OF 2023, ch. 449, § 4. Further, courts are required to waive any DNA collection fee imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 43.43.7541(2).

dependency evaluation.  We remand to strike the DNA collection fee and VPA.

Díaz, J.

WE CONCUR:

Birk, J.

Coburn, J.