# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ELIZABET STARLING | No. 60209-1-II |
| Appellant, | |
| v. | |
| AUSTIN GREGORY SMOGAR, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—In August 2024, Elizabet Starling petitioned for a permanent domestic violence protection order against Austin Smogar, her ex-boyfriend. Starling brought this petition after Smogar sent her photographs of her dog that she had requested several months earlier in January 2024. Starling and Smogar had no contact between January and August 2024. In her petition, Starling described several alleged incidents of physical and sexual assault by Smogar before 2024. Starling and Smogar both submitted evidence of messages between them during that time demonstrating a high-conflict relationship.

After reviewing the parties' pleadings and holding a hearing, the trial court denied Starling's petition. It noted that there was almost no contact between Starling and Smogar in 2024 and that Smogar's messages about dog photographs in 2024 did not constitute harassment. It further determined that while evidence from before 2024 showed an unhealthy relationship—and that the parties disagreed about the facts of that relationship—there was not sufficient information in the record justifying a permanent domestic violence protection order. The trial court instructed

the parties that they should not contact each other and that either of them could file for a protection order if contact occurred in the future.

Starling appeals the denial of her petition, arguing the trial court did not adequately consider her evidence of alleged domestic violence. Starling also contends that the trial court violated a statute that restricts reliance on the lack of recent contact between the parties in a protection order proceeding. Finally, Starling challenges several procedural elements of the hearing.

Generally, by statute, trial courts should not rely on lack of recency when determining whether to enter a protection order. But here, reading the trial court's statements about lack of recency in context, the trial court determined that a permanent domestic violence protection order was not justified because neither Smogar's conduct in 2024 nor his conduct before then constituted domestic violence against Starling. We defer to the trial court regarding the weight of the evidence and credibility determinations. Accordingly, we conclude that the trial court did not abuse its discretion by denying Starling's protection order petition. Additionally, Starling's procedural arguments fail. We affirm.

FACTS

I. PROTECTION ORDER FILINGS

In 2024, Starling obtained a temporary protection order against her ex-boyfriend, Smogar. On August 30, 2024, Starling petitioned for a permanent domestic violence protection order. Smogar filed a response, and Starling filed a reply declaration a week before the hearing on her petition. Both Starling and Smogar attached many pieces of evidence to their petition and response filings, including messages that they allege came from the other party. In the evidence provided

by both Starling and Smogar, it is sometimes unclear who was sending the messages or making the calls that are documented. However, neither party denies nor challenges the majority of these contacts.[1]

A.      Evidence from 2024

In her petition for a permanent order, Starling stated that Smogar had repeatedly reached out to her despite her requests that he stop contacting her. Starling specifically listed two occasions where Smogar texted and emailed her in August 2024 about sharing pictures of her dogs long after Starling had asked for the pictures. She indicated that Smogar had not initiated contact with her for eight months before then.

The parties submitted evidence of these messages to the trial court. In January 2024, Starling messaged Smogar asking for photographs of her dogs. After this message, there is no evidence of communication between Starling and Smogar for eight months. However, on August 20, Smogar texted Starling stating, "Did you still want the pictures of the doggos? I kinda feel bad. It was petty of me to not resend them." Clerk's Papers (CP) at 19. A week later, on August 27, Smogar emailed Starling with the photographs of her dogs, writing, "I was a petty [b**ch] before and didn't send them when you asked, so I hope this attempts to partially make up for that. . . . At least let me know you got these." CP at 18. This is the last documented contact between Starling and Smogar that was submitted to the trial court.

---

[1] At several points, Starling references evidence outside of the record on appeal. However, we are "confined to evidence presented to the trial court" except where criteria set forth in RAP 9.11(a) are satisfied. *See State v. Elmore*, 139 Wn.2d 250, 302, 985 P.2d 289 (1999). The RAP 9.11 factors have not been argued or satisfied here.

In her reply declaration, Starling said that she did not remember sending the January 2024 message to Smogar requesting pictures of her dogs.

B.    Evidence from Before 2024

1.    High-conflict messages

Starling and Smogar also submitted other evidence demonstrating an antagonistic on-and-off relationship between 2021 and 2023.

The evidence submitted to the trial court demonstrates that both parties requested no contact on several occasions. Starling contended that throughout December 2023, Smogar reached out to her repeatedly without a response. She attached screenshots showing many unanswered calls and texts from different numbers, at least one of which was connected to Smogar. Starling also submitted a declaration from a friend stating that Starling had talked to her about Smogar's physical and emotional abuse.

In his declaration, Smogar stated that he had blocked Starling on several social media accounts and she would persistently use different phone numbers and accounts to contact him. For example, on December 8, 2023, Starling sent Smogar a text message with demeaning language about a woman he was dating. After Smogar replied, Starling then sent a series of text messages stating,

> Bye loser. And I don't take threats kindly. I have the right to the amendment of freedom of speech btw. Much worse could be done. Much. Much. Worse.

> Check your brakes each morning before you leave the driveway.

> Make sure no one [f*cked] with your gas lock.

CP at 72.

Smogar also said that Starling had also sent messages to his family, friends, and coworkers saying false things about him. In a declaration, Smogar's mother stated that after Smogar and Starling broke up, Starling sent her unsolicited and harassing messages about Smogar. Additionally, Smogar included declarations from two friends who stated that Starling had reached out to them with insulting or vulgar messages about Smogar.

### 2. Physical and sexual assault allegations

In her petition, Starling also described several instances between 2021 and late 2023 where she asserted that Smogar physically or sexually assaulted her. Starling submitted several messages between her and Smogar where she referenced incidents of violence by Smogar.

For example, on December 26, 2023, Starling texted Smogar asking him not to contact her. After he messaged her again, Starling stated, "Austin I've asked you about 4 times now to stop contacting me." CP at 40. Smogar replied, "But you do know it goes both ways right? If you truly want me to stop contacting you[,] will you leave me, and everyone else I know alone too?" CP at 41. Starling also provided messages from that day where she said,

> You pulled my hair two different times. Karate chopped me in the neck once. Dropped me to the ground after I told you not to. Slammed on the brakes because you claim it was funny knowing my stomach was hurting bad. Smacked me because you thought I was trying to piss you off. Even if I happen to be intentionally trying to piss you off, it's just a justification to physically hurt someone!

CP at 24. Smogar responded, "The car thing? That was just me being stupid I thought it would've been a little funny I didn't realize it would actually hurt you and I know for a fact I did apologize [after]." *Id.* Starling asked Smogar to stop contacting her and he agreed. Starling then sent another message, though the full content of that message is cut off.

5

In response to Starling's other messages about physical and sexual assault, Smogar either did not respond, responded neutrally, or contested the facts of the incident and whether it constituted domestic violence. In his declaration, Smogar denied ever physically or sexually assaulting Starling.

> 3.   Other evidence

In her petition for a permanent protection order that was filed August 30, 2024, Starling also claimed that Smogar aided Makenzie Hertenstein, a woman he dated after Starling, to seek a frivolous protection order against Starling, which Starling contended constituted an abusive use of litigation. To support this claim, Starling submitted an undated message from Hertenstein to Smogar asking for Starling's address, phone number, date of birth, and full name to give to a lawyer, which Smogar provided. We note that the trial court granted Hertenstein's protection order against Starling and this court denied discretionary review on appeal. *See Hertenstein v. Starling*, No. 60003-0-II (Wash. Ct. App. Nov. 25, 2025) (unpublished).[2]

## II. PROTECTION ORDER HEARING

On October 15, 2024, a trial court commissioner held a hearing to address Starling's August 2024 protection order petition. Starling asked for a continuance to give the trial court sufficient time to review her reply declaration, which exceeded the page limit. The trial court stated that it would address her request later in the proceedings. After indicating that it had "read the materials," seemingly referring to Starling's declaration, the trial court heard from both Starling,

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2060003-0-II%20Unpublished%20Opinion.pdf

who was unrepresented, and Smogar's attorney about whether to admit Starling's overlength declaration. Verbatim Rep. of Proc. (VRP) at 5.

The trial court also heard arguments from both parties about whether to grant Starling's protection order. During argument, Smogar further requested that the trial court realign the parties and grant a protection order for him against Starling. On several occasions, the trial court asked Starling questions specifically about what conduct happened in 2024.

After hearing from both parties, the trial court denied Starling's petition for a permanent protection order against Smogar:

> There's many years of issues and many years of messages. It appears that the parties had a long pause of communication in 2024. My understanding is Ms. Starling wants no communication with Mr. Smogar and Mr. Smogar wants no communication with Ms. Starling.
>
> . . . .
>
> I think it's then appropriate to have a short term order so that the parties can hopefully really understand that there's been – – there's no need for communication whatsoever. So Mr. Smogar, don't email her, don't text her, don't call her, don't Venmo her, don't contact her on social media, don't go near her. And Ms. Starling, the same; don't email him, don't text him, don't call him, don't go near him, don't go to his workplace, don't go to his place of residence.
>
> You guys have both made it very clear that you do not want contact with each other. I don't find a basis for a protection order because I can't find where in the – – this calendar year of 2024 that there's been any threats, or stalking, or unlawful harassment. What I find is that this was a very unhealthy relationship that ended. The parties have very different positions on what happened during the relationship.
>
> I am not going to grant a full protection order because I don't find that there is significant information to justify the issuance of a protection order. However[,] if Mr. Smogar contacts you again, Ms. Starling, he's on notice that he's not to contact you and you can refile for a protection order if he contacts you again, with the information about what he – – how he contacted you.
>
> Mr. Smogar, if she contacts you again in the future . . . you can file for your own protection order.

VRP at 14-15.

The trial court further stated, "I'm finding that the motion to strike over page limits is irrelevant because I'm denying the petition. And so I'm going to dismiss the case because I find insufficient evidence to grant a full protection order." VRP at 15.

When Starling said she did not want to go back to court should Smogar contact her, the trial court said, "Yeah, I totally understand. But I don't have any reason to believe that he is actually going to contact you again." VRP at 16. The trial court also emphasized the importance of not contacting friends or family of the other party.

In its written order denying Starling's petition, the trial court found that "[a] preponderance of the evidence does not support issuing any type of protection order." CP at 143. Despite denying Starling's continuance, the trial court indicated that it reviewed "[a]ll pleadings filed" by each party. *Id.* The trial court stated that the parties should not contact each other and either party could file a protection order petition if the other violates that directive.

## ANALYSIS

### I. EVIDENCE OF DOMESTIC VIOLENCE

Starling argues that the trial court abused its discretion by failing to properly consider her evidence that Smogar harassed her and therefore committed domestic violence against her.

We review a trial court's decision to grant or deny a protection order for an abuse of discretion. *Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons." *Davis v. Arledge*, 27 Wn. App. 2d 55, 64, 531 P.3d 792 (2023). Applying the wrong legal standard is an abuse of discretion. *Juarez v. Juarez*, 195 Wn. App. 880, 890, 382 P.3d 13 (2016). For a

protection order proceeding, we review the trial court's findings of fact for substantial evidence. *Davis*, 27 Wn. App. 2d at 64. A fact is supported by substantial evidence if there is evidence on the record sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Id.* We defer to the trial court about the "persuasiveness of the evidence, witness credibility, and conflicting testimony." *Id.* We review questions of law de novo. *In re Vulnerable Adult Pet. of Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

To obtain a domestic violence protection order, the petitioner must demonstrate by a preponderance of the evidence that domestic violence occurred. *Davis*, 27 Wn. App. 2d at 64. Under RCW 7.105.010(10)(a), "domestic violence" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner." Domestic violence is not limited to acts that cause physical injury. A trial court is statutorily required to issue a domestic violence protection order if it finds by the preponderance of the evidence that the petitioner has been subjected to domestic violence by the respondent. RCW 7.105.225(1)(a).

A.      Evidence of 2024 Harassment

First, Starling contends that the three contacts by Smogar in 2024 were sufficient to constitute unlawful harassment under RCW 7.105.010(10)(a). We disagree.

For the purposes of protection orders, "unlawful harassment" includes "[a] knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose." RCW 7.105.010(37)(a). Under RCW 7.105.010(7)(a), a "course of conduct" means a "pattern of conduct

composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." A "course of conduct" includes "any form of communication, contact, or conduct, including the sending of an electronic communication, but does not include constitutionally protected free speech." *Id.*

When deciding if a course of conduct serves a legitimate or lawful purpose, the trial court can consider whether the contact between the parties "was initiated by the respondent only or was initiated by both parties," whether the respondent "has been given clear notice that all further contact with the petitioner is unwanted," and whether the respondent's "course of conduct appears designed to alarm, annoy, or harass the petitioner." RCW 7.105.010(7)(b)(i)-(iii).

Here, evidence on our record demonstrates that in January 2024, Starling messaged Smogar asking for photographs of her dogs. The parties then had no contact with each other for several months. In August 2024, Smogar sent two messages to Starling asking if she still wanted the photographs, provided her with them, and expressed regret for not having sent them sooner. Starling indicated that Smogar had not contacted her for eight months before August 2024 when he sent her the dog pictures. Starling filed the petition for a protection order in response.

From the evidence in the record, we see that the complex and unhealthy dynamics in the relationship between Starling and Smogar before 2024 likely contributed to the way Starling reacted to the August 2024 messages. However, even within that context, it was not an abuse of discretion for the trial court to conclude that these messages did not constitute unlawful harassment. After repeatedly asking Smogar not to contact her, Starling messaged Smogar first asking for the photographs, and then he sent them, though many months later. It was not manifestly

unreasonable for the trial court to conclude that this exchange, prompted by Starling, was not unlawful harassment under the applicable standard.

B.       Evidence of Pre-2024 Domestic Violence

Starling next argues that the trial court abused its discretion by failing to consider her evidence of specific alleged incidents of domestic violence and failing to make a finding of domestic violence based on that evidence. Again, we disagree.

We defer to the trial court's weighing of the evidence and credibility determinations. *Davis*, 27 Wn. App. 2d at 64. In the record here, there are several messages between Starling and Smogar where Starling alleged incidents of domestic violence by Smogar. In response to these messages, Smogar either did not respond, responded neutrally, or contested the facts of the incident and whether it constituted domestic violence. In his declaration, Smogar denied ever physically or sexually assaulting Starling. Smogar also filed declarations from others raising questions as to Starling's behavior and truthfulness.

Here, the trial court acknowledged that Starling and Smogar had an unhealthy relationship and that they had conflicting accounts as to what happened during the relationship, requiring the trial court to weigh their credibility. While Starling's descriptions of the alleged incidents of Smogar's domestic violence raise serious concerns, particularly where Smogar did not respond or deny the accusations in the messages on our record, we defer to the trial court on matters of witness credibility and the weight of the evidence. *Davis*, 27 Wn. App. 2d at 64.[3] Starling has not shown

---

[3] Starling's appellant's brief references facts that occurred after the trial court's decision. She also discusses facts that are not included in our record (for example, police reports). Even for much of the evidence included in our record, the record does not specifically identify who sent certain text messages or made certain phone calls. We again note that we can only consider the record before

that considering all of the circumstances, the trial court abused its discretion, especially in light of the deference we give the trial court as to credibility and the weighing of the evidence.

II. COMMENT ABOUT 2024 CONDUCT

Starling additionally argues that the trial court erred by incorrectly relying on the lack of recent contact between Starling and Smogar in 2024 to deny her petition for a protection order. We disagree.

RCW 7.105.225(2) outlines six grounds that the trial court cannot rely on when denying a protection order petition. Relevant here, RCW 7.105.225(2)(e) states that courts "may not deny or dismiss a petition for a protection order on the grounds that . . . [t]he conduct at issue did not occur recently or because of the passage of time since the last incident of conduct giving rise to the petition." Generally, Washington courts have held that a petition for a domestic violence protection order does not require an allegation of recent domestic violence, and a "showing of present fear based on past conduct is enough to support the petition." *Davis*, 27 Wn. App. 2d at 66; *see also Spence v. Kaminski*, 103 Wn. App. 325, 334, 12 P.3d 1030 (2000).

*Davis* involved a domestic violence protection order against the petitioner's ex-boyfriend. 27 Wn. App. 2d at 59. Immediately after the petitioner broke up with her ex-boyfriend, he blocked her from leaving his house. *Id.* He then attempted to contact her more than a dozen times over the course of a month without a response. *Id.* at 60. After a period of no contact, the ex-boyfriend emailed the petitioner's workplace, accusing her of retaliating against him professionally after their relationship ended. *Id.* at 60-61. The petitioner then sought a protection order, stating that her

---

us except where criteria set forth in RAP 9.11(a) are satisfied. *See State v. Elmore*, 139 Wn.2d 250, 302, 985 P.2d 289 (1999). Starling has not argued or satisfied the RAP 9.11 criteria.

12

ex-boyfriend had previously threatened suicide, had a substance use disorder, and had access to firearms. *Id.* at 61. The ex-boyfriend attempted suicide the morning of the hearing. *Id.* The trial court granted the protection order petition and Division One affirmed on appeal. *Id.* at 63, 76. Division One concluded that though there was a gap in contact between the parties, substantial evidence supported the trial court's finding that the petitioner's present fear was reasonable based on the ex-boyfriend's past conduct. *Id.* at 66-67.

Here, the trial court stated,

> I don't find a basis for a protection order because I can't find where in the — this calendar year of 2024 that there's been any threats, or stalking, or unlawful harassment. What I find is that this was a very unhealthy relationship that ended. The parties have very different positions on what happened during the relationship.

VRP at 15. The trial court reached this conclusion after asking Starling during the hearing to focus on Smogar's conduct that occurred in 2024. But in context, it appears the trial court was addressing whether the then-recent email communications constituted harassment and therefore domestic violence. The trial court also did not find that Smogar had committed domestic violence against Starling in the past. In its written order, the trial court stated that it had reviewed all of the pleadings submitted in the case, which included allegations and evidence related to conduct that occurred before 2024. The trial court nevertheless concluded, "I am not going to grant a full protection order because I don't find that there is significant information to justify the issuance of a protection order." *Id.*

We acknowledge that generally a trial court should take care not to suggest that it is focusing solely on recent conduct. But here, the trial court's findings and conclusions stated that (1) Smogar's communications with Starling in 2024 about the dogs did not constitute domestic violence, (2) Starling and Smogar were in an unhealthy relationship before 2024, (3) the facts of

this relationship were contested, and (4) the information in the pleadings did not justify the issuance of a protection order. These findings and conclusions were sufficient to demonstrate that the trial court did not rely solely on the lack of recency of Smogar's alleged conduct when denying Starling's petition.

### III. PROCEDURAL ARGUMENTS

#### A.    Continuance

Starling argues that the trial court abused its discretion by denying her requested continuance to allow the court to review her declaration, which exceeded the required page limit. However, both during the hearing and in its written order, the trial court indicated that it read Starling's declaration as part of its review of the petition. Accordingly, a continuance was not needed for the trial court to review Starling's declaration, so the trial court did not abuse its discretion when it denied the continuance.

#### B.    Fairness of Hearing

Starling argues that the trial court deprived her of a fair hearing by failing to address Smogar's counsel's behavior at the hearing, which she asserts included interrupting Starling and raising his voice.[4] She contends this violated the appearance of fairness doctrine.

Under the appearance of fairness doctrine, "a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). We presume that

---

[4] Starling also cites Smogar's counsel's motion to withdraw as a procedural irregularity that undermined the fairness of the hearing. However there is no indication of why Smogar's counsel withdrew in our record, so we cannot determine the withdrawal's relationship, if any, to the fairness of the proceeding.

a trial court acts without bias or prejudice. *In re Disciplinary Proc. Against King*, 168 Wn.2d 888, 904, 232 P.3d 1095 (2010). Accordingly, a party asserting a violation of the appearance of fairness doctrine must produce evidence of a judge's actual or potential bias. *State v. Gamble*, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010). We review an alleged violation of the appearance of fairness doctrine de novo. *King*, 168 Wn.2d at 899.

Upon our review of the record, we do not see evidence of behavior by Smogar's counsel that undermines the hearing's appearance of fairness. The hearing does not contain multiple interruptions of Startling's arguments and there is no indication from the record that Smogar's attorney was attempting to intimidate her. Based on this record, Starling has failed to show that she was deprived of a fair, impartial, and neutral hearing because of the trial court's handling of Smogar's counsel's conduct.

Starling also argues that the trial court's grant of Hertenstein's petition for a protection order against Starling demonstrates that Starling's hearing for a protection order against Smogar here was unfair. Starling argues that Smogar was involved in bringing Hertenstein's petition, and that this constituted an abuse of the legal process against Starling.

In a separate appeal, this court denied discretionary review of the trial court's grant of Hertenstein's protection order against Starling for unlawful harassment. *Hertenstein v. Starling*, No. 60003-0-II (Wash. Ct. App. Nov. 25, 2025) (unpublished).[5] In that case, Starling sent multiple unsolicited and highly insulting messages to Hertenstein and Hertenstein's friends and coworkers despite Hertenstein's multiple efforts to cease communication with and block Starling. *Hertenstein*, slip op. at 2. The trial court's grant of Hertenstein's protection order, which we

---

[5] https://www.courts.wa.gov/opinions/pdf/D2%2060003-0-II%20Unpublished%20Opinion.pdf

declined to review on appeal, involved an almost entirely different set of circumstances and facts than the case here, and it is not comparable to this case. Thus, the issuance of a protection order against Starling in that case is not evidence that it was unfair not to grant Starling a protection order in this case.

Additionally, the only nonspeculative evidence in our record that Smogar was at all involved with Hertenstein's petition for a protection order is a message where Hertenstein asked Smogar for basic identifying and contact information for Starling and he provided it. This is not sufficient to demonstrate that Smogar was actually involved in Hertenstein's decision to bring the petition nor that Hertenstein's petition involved an abuse of process against Starling. In sum, we conclude there was no violation of the appearance of fairness doctrine.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

PRICE, A.C.J.